**INDEMNITY INS. CO. OF NORTH AMER-
ICA v. WILLIAMS.
No. 2503.**

Court of Civil Appeals of Texas. Beaumont.
March 15, 1934.

Rehearing Denied March 21, 1934.

Barnes & Barnes, of Beaumont, for appellant.

D. E. O'Fiel and Tom C. Stephenson, both of Beaumont, for appellee.

O'QUINN, Justice.

Appellee brought this suit in the district court of Jefferson county to set aside an award of the Industrial Accident Board made August 28, 1931, denying him compensation which he claimed by reason of injuries which he alleged he sustained on July 17, 1925, as an employee of the Gulf Refining Company at Port Arthur, Tex., which company carried compensation insurance with appellant. His petition contained the usual and necessary allegations in a suit of this nature. Appellant answered by general demurrer, several special exceptions, general denial, and specially pleaded the 6-month and 2-year statutes of limitation against appellee's right to recover.

The demurrers and exceptions were overruled, and the case was tried to a jury upon thirty-eight special issues, upon their answers to which judgment was rendered in favor of appellee in a lump sum against appellant for 325 weeks at the rate of $11.67 per week, amounting (less 6 per cent. discount) to $3,567.25, with interest thereon at

the rate of 6 per cent. per annum from February 28, 1933, the date of the judgment. Motion for a new trial was overruled, and the appellant brings this appeal.

The case is before us on thirty-one propositions based upon forty assignments of error. We shall not discuss them seriatim, nor all of them, but only such as are necessary for a determination of the controlling questions.

Appellant's first assignment complains of the court's refusal to give its requested charge for an instructed verdict. This is based upon the contention that the overwhelming preponderance of the evidence is against the findings of the jury that appellee's condition is due to any accidental injuries received by him in the course of his employment.

The record discloses that on July 17, 1925, appellee was an employee of the Gulf Refining Company at Port Arthur in Jefferson county, Tex.; that at said date said company was carrying compensation insurance with appellant, which insurance covered appellee. On that date appellee was injured while engaged in the work of his master. This injury was duly reported to the Industrial Accident Board by the Gulf Refining Company. It was agreed by the parties that appellee was receiving $2.80 per day, and that he worked 7 days per week, and that his average weekly wage was $19.60. Upon notice of the injury, appellant acknowledged liability and paid appellee the sum of $62.28, taking a "compensation settlement receipt," reciting that the payment covered 45 days' total disability, and that it was for "all injuries sustained" by appellee by reason of the injury of July 17, 1925, and that his injuries had terminated. This receipt was dated September 5, 1925. When he received his injury, appellee was sent to the Mary Gates Hospital in Port Arthur, where he remained for some 2 weeks, the while being treated by the refinery company's doctor, when he was sent to his home. His injuries consisted of severe burns about his head, face, arms, and legs. After some 7 weeks (52 days), he was sufficiently recovered from his burns to be and was returned to work, but was not put at the same kind of work that he performed before the injury. He was given lighter work, various kinds, until August of 1927, when he was made foreman of a negro crew, which place he held until February 28, 1931, when he was discharged or let out. During this time he received slightly less pay per day than he was receiving at the time he was injured. Since being discharged, he has not worked at anything, and we think the evidence supports his contention that he has not been physically able to have done any kind of physical labor. On May 20, 1931, he filed notice of injury and claim for compensation with the Industrial Accident Board. On August 28, 1931, the board denied his claim for compensation. He duly gave notice that he would not abide the decision or ruling of the board, and filed this suit to set aside said award, resulting in the judgment above mentioned.

At the time appellee received his injuries he was working in what was called the "Rankin Chamber" of a "500 Type still"—"High Pressure Stills." He was knocking down or stoking coke used in heating the stills. The entrance to the chamber of the still was small—just about large enough to admit a man's body. The coke (used as burning fuel in the heating and refining process) to be stoked was overhead, and, when appellee punched or knocked it, a "big pile" of the coke suddenly gave way and fell on him, striking him on the head and face and contacting with his hands and legs. Appellee testified that "they had spud bars to punch that coke down from the side of the still, and they had coke up right over the door, and I was inside and I punched the spud bar up and broke it loose, and by it being foul with water and steam, that's where it fell. I was standing up punching it over my head (illustrating), and when I put the spud bar up there, it broke loose, and all that fire and stuff come down and I couldn't get loose."

He further testified:

"Q. Was there or not fire in it? A. Yes, sir, there was fire in it.

"Q. What was it that broke loose? A. Coke, but the fire was smothered by being water from the tophead.

"Q. Just what quantities or amounts of coke? A. Well, that was a great big piece of coke; it was big as any barrel.

"Q. Were you struck anywhere about the body or head by that? A. Struck about the head. (Exhibited head.)

"Q. Do you know how you got out of the place? A. No; Jeff Franklin say he pulled me out. I don't know how I got out."

Franklin testified that he pulled appellee out of the chamber, put him down by the outside wall, and went after the "boss." There is no doubt that appellee from some cause had lost the use of his right hand,

and had lost his left eye. Appellant strenuously insists that such loss was not caused by the burns he received at the time in question, but in answer to special issue No. 10 the jury found that the burns were the "producing cause" of the injuries resulting in the incapacities. No good purpose could be served by our setting out the voluminous evidence bearing upon this issue, but we will say that, after carefully considering the record, we think the finding abundantly supported. The assignment is overruled.

Several assignments assert that, because of conflicts in the answers of the jury to special issues, no judgment should or could be rendered; that the answers were so inconsistent and contradictory as to destroy each other, and therefore no judgment could be based upon them.

■ In answering special issues 3 and 4, the jury found that appellee had suffered total incapacity to work, and that such incapacity was permanent. In answer to special issues 6, 7, and 8, they found that appellee had suffered 85 per cent. partial incapacity, and that such incapacity was permanent. It is contended that these findings are conflicting and destroy each other. We think the contention well taken. It is further contended that the finding in answer to issue 22 that, when appellee was discharged from the care of the physician treating him after his injury, he was suffering partial incapacity, and in answer to issue 23 that during this partial incapacity his weekly earning capacity was $19.46, and it being agreed that appellee's weekly earning capacity before the injury was $19.60, and the jury's answer to special issue 4 found appellee totally and permanently incapacitated, these findings were so contradictory as to not form any basis for a judgment. We are inclined to agree with this contention, but think some of the apparent inconsistencies could be explained so as to not show them destructive of each other. Also it is contended that the answer of the jury to special issue 23 that during his incapacity after returning to work appellee earned $19.46 per week, only 14 cents less than his agreed earning capacity before the injury, and in answer to issue 24 that appellee's earning capacity was only 15 per cent. as compared with his earning capacity before the injury, that these findings were so inconsistent and contradictory as to destroy each other. This contention is sound. It is also contended that in answer to issue 33 the jury found that appellee's disability was limited to the loss of the use of a hand and the loss of an eye, while in answer to issue 34 they found that his disability was limited to the right arm and left eye; hence these findings contradicted and destroyed each other. This apparent conflict comes from the fact that the evidence showed that, by reason of the burns on appellee's right hand and forearm, the hand had so shriveled up, perished away and drawn and stiffened the hand and fingers as that he had lost the use of the hand. The left eye was totally blind because of the burns to it. We do not find any evidence to support a finding that the use of the right arm, as an arm is designated by law, was lost, but the arm was affected, of course, by the loss of the use of the hand. So we do not think the conflict, if any, was such as to destroy the effect of the findings mentioned.

■ The alleged conflicting answers discussed above were in response to special issues submitted based upon the various phases of the case made by the pleadings, and if it be conceded that they are inconsistent and even conflicting, still by reason of other findings on separate, independent, and controlling issues properly submitted, they were immaterial, and some of them without support in the evidence, and not at all necessary as findings upon which to base the judgment. In answer to issues, the jury found that appellee, by injuries sustained, suffered the loss of the use of his right hand and the loss of his left eye. And in answer to issue 33 they found that his disability was limited to the loss of the use of a hand and the loss of an eye. The law, article 8306, § 12, provides specific compensation for the loss of an eye and a hand at 60 per cent. of the employee's average weekly wages for 325 weeks. In view of the evidence, which abundantly supports the finding of the loss of the use of a hand (which equals the loss of the hand) and the loss of an eye, the court, under article 2211, R. S. (as amended by Acts 1931, 42d Leg., p. 119, c. 77, § 1 [Vernon's Ann. Civ. St. art. 2211]), was authorized to and properly did set aside the findings complained of as immaterial, inconsistent, and conflicting, and without support in the evidence, and rendered judgment on the findings as to the loss of the hand and eye.

■ The assignment that the court erred in granting judgment for compensation at the rate of $11.67 per week is overruled. The contention is that the wage should have been fixed at $9.69. This contention is based upon the argument that it was agreed that

appellee at the time of his injury was receiving $2.80 per day and working 7 days per week, and so was earning $19.60 per week. But, as appellee had not worked for the whole of the preceding year, or substantially the whole of the preceding year, then the weekly wage should have been found by multiplying the daily wage by 300 and dividing by 52, which gave $9.69 as the weekly wage. This contention is not sound. The agreement showed that an employee who had worked the whole of the preceding year received $2.80 per day. The agreement does not state that such employee worked 7 days per week, but the undisputed evidence shows that appellee was working 7 days per week, and the agreement shows that he earned $2.-80 per day, or $19.60 per week. Upon that basis the average wage was $19.60 per week as used by the court. But, if the annual wage, $2.80 per day for 365 days, or $1,022, be taken and divided by 52, the average weekly wage is $19.65, 60 per cent. of which is $11.76. The judgment was not excessive.

■ Appellant's thirteenth, fourteenth, and fifteenth propositions assert that the court erred in refusing its request for an instructed verdict because appellee's claim for compensation was not filed with the Industrial Accident Board within 6 months after the accident, as required by law, and there was no pleading of good cause for failure to so file said claim.

The accident resulting in appellee's injuries occurred on July 17, 1925. It occurred on the grounds of the employer, and said employer had actual notice of the injury at the time. The employer, the Gulf Refining Company, immediately reported the accident and injury to the Industrial Accident Board and to the insurance carrier, appellant. Appellant acknowledged liability, and for a time paid weekly compensation to appellee until it had paid the sum of $62.28, when appellee was discharged by the doctor in charge, and returned to work, as stated in the first part of this opinion. Appellee testified, and the jury found, that at the time he was returned to work he was incapacitated and could not do the kind of work he had done before the accident, and was put at different and lighter work, which, in various capacities, he performed until he was discharged on February 28, 1931. He filed his claim for compensation with the Industrial Accident Board on May 19, 1931. He testified that since his discharge by his former employer he had sought work, but had not been able to secure any, for the reason that he was then, and ever since has been, unable to perform any kind of physical labor. All this he alleged in his petition. He further alleged that "* * * plaintiff was compelled to file his written claim for compensation with the Industrial Accident Board of the State of Texas, which he alleges he did within six months from the date of said accident and injuries and upon the happening and accrual of total disability. * * *"

He further alleged: "This Plaintiff presents that since receiving his said injury on or about the 17th day of July, 1925, that he was severely burned and injured and sustained the injuries from which his present condition has developed, that after his burns and other injuries had partially healed, that the plaintiff herein was discharged from further treatment at the hospital, and was permitted to return to his home, where after recuperating for a few weeks, he was required by said employer, under the terms and provisions of Section 12a, of Article 8306 of the Revised Statutes of Texas, and was tendered employment reasonably suited to his incapacity and physical condition, upon the premises of the plant of the said Gulf Refining Company, his said employer at the time when the said injuries were inflicted upon him; that the plaintiff worked and labored at said employment until sometime on or about the 19th day of May, 1931, or within the period of six months immediately preceding the same, when he became totally and wholly incapacitated from laboring and working because of the condition of his body, right hand, and left eye, when on account of his physical incapacity and his inability to further work and labor, the plaintiff herein was either obliged to quit his said employment or that he was discharged from his said employment by his said employer; that thereafter and since, the said plaintiff has been unable to work or labor at any kind of employment so as to earn money and be entitled to be paid any consideration for his said services, and that the said injuries and disabilities sustained by this plaintiff, have affected his right hand and arm and plaintiff's left eye and the other physical structures of his body, so that the plaintiff's disability herein complained of is total and permanent."

All the allegations in appellee's petition relating to his injuries and ability to perform labor, and claim for compensation, should be construed together. While the allegations are inartistically drawn, and perhaps not as clear and full as should be, still we think that, when they are given all the intendments to which they are entitled, they show a sufficient

pleading of good cause for not filing claim for compensation within 6 months from the date of the accident, and a filing of the claim within 6 months from the resulting of disability to labor, such as appellee was able and qualified to do, resulting from the accident. The effect of the pleadings as to good cause for not filing his claim for compensation within 6 months after the accident is that, after being discharged by the doctor as being able to perform labor, although not able to do the work he had performed before the accident, he was given other and different work, lighter or requiring less physical power, than his usual work, as provided in article 8306, § 12a, and that he accepted same, though partially incapacitated, and continued to perform same until his incapacitation or disability became such that he was discharged, his disability at that time being such as to incapacitate him from physical labor, and that, when he was thus discharged (February 28, 1931), he did within 6 months after such discharge and disability and incapacity to labor file his claim for compensation with the Industrial Accident Board, which the records show was on May 19, 1931.

We think the effect of the pleading is that, when appellee was discharged from treatment of his injuries, his employer offered him employment reasonably suited to his then incapacity and physical condition, and that he accepted same, and continued to perform same for a period of some 5 years, though during this period his incapacity increased and his ability to labor decreased until he could no longer meet the tasks offered to him and required of him to perform, when he was discharged. And that, but for the offered work and his receiving wages for its performance, he would have filed his claim within 6 months after receiving the injury. Upon this pleading and under the evidence supporting same, the court correctly submitted the issue complained against, and the finding of the jury has support in the record. Good cause and a meritorious case were shown. The law, section 12a, article 8306, R. S. 1925, provides that, if the injured employee refuses employment reasonably suited to his incapacity and physical condition, procured for him in the locality where he was injured, he shall not be entitled to compensation during such period of refusal, unless in the opinion of the board such refusal is justifiable. Appellant acknowledged its liability to appellee and paid him for total incapacity for some weeks, stopping the payments when the doctor discharged appellee from treatment as able to work. His employer, Gulf Refining Company, recognized his partial incapacity to work by offering him lighter work, wholly different from that he performed before the injury. As the law required and as was right, appellee accepted this employment until he was discharged, and then, by reason of his incapacity to labor resulting from his injuries, he filed his claim for compensation in about 2 months after being discharged.

■ Moreover, it has been held that, where an employee believed his injuries were not such as to materially incapacitate him from work, and under this belief accepts work such as his condition permits him to perform, until the results of the injury have progressed to that extent as to disable him from labor, and he then presents his claim for compensation within 6 months of the occurrence of this disability, good cause is shown for the delay in filing claim under article 8307, § 4a, R. S. 1925. Compensation is not provided for pain and suffering, but for the loss of wages, and no necessity would arise for giving notice and filing claim so long as the employee lost no time from his work, and received regular wages, the while under the belief his injuries were trivial or not lasting. Texas Employers' Ins. Ass'n v. Clark (Tex. Civ. App.) 23 S.W.(2d) 405 (408) (writ dismissed); Holloway v. Texas Indemnity Ins. Co. (Tex. Com. App.) 40 S.W.(2d) 75, 78; New Amsterdam Casualty Co. v. Scott (Tex. Civ. App.) 54 S.W.(2d) 175 (writ refused).

■ The seventeenth, nineteenth, and twentieth propositions complain of what is denominated a general charge in the form of special instructions to the jury relative to the argument of counsel for appellant to the jury, insisting that such charge was prejudicial and reversible error.

The record discloses that counsel for appellant, in arguing the case to the jury, said:

"I don't want any man to say a juror's job is a little job. A juror is superior to the judge in the fact determination. Did you know, His Honor on the bench yonder cannot take away from you the right to fix the facts? He cannot do it. The law says whenever you find a fact, that is conclusively binding on the court. So you are the men who have a big job, the authority of which cannot be taken from you by the court in all of its authority. And you have the privilege of fixing the facts. And, men, when you are fixing them, remember that they are fixed. Whenever you find that a certain thing is true, it is true: your finding makes it true, so far as

the law is concerned. Remember that. Neither the lawyers nor the court can change your findings, and they are forever the facts, so far as the law is concerned, in this case.

"His Honor doesn't say 'was the injuries that he might have received any old time' the producing cause, but 'was the injury he received on July 17, 1925, the producing cause' of his drawn finger and his blind eye. It seems to me that unquestionably there is an overwhelming preponderance of the evidence here that says it is not the producing cause. I believe that there are twelve men on the jury that believe it wasn't the producing cause. I believe there is one man on the jury—and I want to say to that one man, or that two men, or that three men, if you think the preponderance of the evidence is here that says it isn't the producing cause, let that one man stand on that one issue forever and ever. And if you know it is right, stay by what is right; it doesn't hurt whether there are eleven or ten or nine or eight or six against you, you are right and you are going to stand by right and not compromise with what is wrong. So, I say, gentlemen of the jury, if there be a man who knows the preponderance of the evidence is contrary to a finding that that unfortunate burn back yonder was the producing cause, stay there forever on your conviction borne out, and made, and created by the evidence that you have heard on this witness stand, and don't compromise your own knowledge and your own understanding of the preponderance of the evidence because somebody disagrees with you, but stand by what you know is right, and stand there till doomsday."

After all argument to the jury was concluded and the court had read his regular charge to the jury, on his own motion, he gave to the jury the following additional charge:

"Gentlemen of the jury: In your deliberations on this case, you will remember and follow your oath, taken as jurors in this case, and find a verdict as charged in the charge by the court.

"You will eliminate from your consideration any demand of Mr. Barnes that under certain conditions you will hang this jury forever; and you are directed that you are not to enter into your deliberations on this case in an antagonistic attitude toward your fellows and their opinions upon the charge and the evidence. Hear and consider with due respect the opinions of one another, and agree upon a verdict according to the instructions given you in the court's charge.

"Neither will you consider the argument of Mr. O'Fiel wherein he refers to the premiums paid by the refining company or the transaction between said company and other parties to this suit, all of which you know is not in evidence, and you will eliminate it from your consideration; but confine yourself to your oath, and bring in a verdict according to the law as given in the court's charge, and according to the evidence submitted to you under the rulings of the court on this trial. You are to try to do this, without violence to your oath and conscience."

Counsel for appellant took the following exceptions to this charge:

"Comes now the defendant in the above numbered and entitled cause, and excepts to the giving of the supplemental charge to the jury by the court, directed at the argument of counsel, for the following reasons, to-wit:

"I. Defendant excepts to the Court's charge with reference to the argument of 'Mr. Barnes,' because it is clearly prejudicial, in that it directly and indirectly criticizes counsel, for argument entirely proper under the law; and in that it suggests and directs the jury to bring in a verdict in spite of the conclusions which might obtain in the minds of one or more jurors.

"II. Defendant excepts to the said instructions with reference to the argument of 'Mr. Barnes,' because it is a peremptory request, or demand, or command, on the part of the trial Judge that the jury find a verdict, even in spite of the fact that one, or two, or more jurors may not find the verdict of the majority of the jury from the evidence.

"III. Defendant further excepts because said instruction clearly suggests to the jury, contrary to law, that if there be a division in the jury, it will be their duty to compromise their findings, or their convictions, and, by virtue of and through a compromise, return a verdict, which is not only contrary to reason, but contrary to the statutory law of this State.

"IV. Defendant further excepts to the Court's charge with reference to said argument, because the Court has instructed the jury not to be antagonistic to the opinions of the other jurors upon the evidence, thereby instructing the jury, contrary to reason and contrary to law, to be influenced by, and give weight to, opinions of other jurors in their deliberations in this case, instead of allowing the jury to follow the main charge and be guided solely by the preponderance of the evidence.

"V. Defendant further excepts to said

charge, because there was nothing in the argument of 'Mr. Barnes,' which requested or urged any juror or any jurors to 'hang the jury,' but, on the contrary, the only argument is to the effect that men stay by their convictions born of and resulting from the evidence and the greater weight of credible testimony.

"VI. Defendant further excepts to the Court's charge with reference to said argument, because there is nothing in said argument to indicate that defendant's attorney asked for antagonism, or antagonistic attitudes towards each other in the jury, but merely urged the jurors to be governed by their conclusions reached from the evidence.

"Respectfully submitted,
"Barnes & Barnes
"Attorneys for defendant.

"The above and foregoing exceptions were duly and timely made and presented to the Court and opposing counsel before the Court read said supplemental charge to the jury, and were by the Court considered, and the Court is of the opinion that same should be overruled, and they are hereby in all things overruled, and the charge is read to the jury, to which action defendant then and there excepted, and this is approved and ordered filed as a Bill of Exception in this case. This 20th day of January, A. D. 1933."

The bill of exceptions embodying these exceptions were allowed with the following qualifications:

"The foregoing Bill of exceptions is approved with this qualification:

"Counsel Barnes had succeeded in procuring a hung jury and a mistrial in one or two cases, which appeared to me to be the result of his said eloquent appeal. He proceeded first to explain to the jury what a heroic thing it was for them to hold out against their fellows, and urged them to stay there forever; and accordingly to my observation the jury was inspired and lifted upon the wings of his eloquence; and it was resulting in hung juries and a waste of my time and patience, and, as I thought, such speech was contrary to public policy and the interests of the county, as impeding the decision of cases and the administration of the law. I endeavored in my said instructions to stay within the duties of a juror under his oath, and I do not believe the effects of such instructions were in any wise pernicious.

"Geo. C. O'Brien,
"Judge.

"To which qualification defendant excepts, and asks leave of the court to file a transcript

of all of Counsel Barnes's argument as a part of the record and as part of this bill of exception, which request is by the Court granted to the extent that that part of the speech which refers to 'hanging the jury' may be made a part of this bill.

"Geo. C. O'Brien,
"Judge."

Counsel for appellant excepted to the qualification of his bill of exceptions and requested leave to file transcript of his whole argument to the jury, which was granted "to the extent that that part of the speech which refers to 'hanging the jury' may be made a part of this bill." (That portion of the argument is set out above.)

We do not believe that the charge is subject to the criticisms leveled against it. It is made the duty of the trial judge by law to charge the jury as to the law of the case and of all its features. Likewise it is his duty to see that the trial of cases is conducted properly and with a view to obtain fair trials, and that the business of the court is transacted with reasonable dispatch, and without unnecessary duplications. It is within his duty, under the law, to, on his own motion, eliminate from the trial of the case those things and occurrences, if any, which appear to be foreign to the proper conduct of same, or tend to obstruct the arrival at justice by the jury. The charge did not direct the jury to bring in a verdict "in spite of the conclusions which might obtain in the minds of one or more of the jurors," nor did it "suggest" that it was the duty of the jurors "to compromise their findings, or their convictions, and, by virtue of and through a compromise, return a verdict, which is not only contrary to reason, but contrary to the statutory law of this state," but very properly admonished the jury "to hear and consider with due respect the opinions of one another, and agree upon a verdict, according to the instructions given," in the court's charge. It is the duty of a jury to arrive at a verdict if they can reasonably do so, and, where there are differences of opinion among the jurors as to the evidence and its weight, where same is conflicting, unless the jurors, by careful consideration of the evidence and the opinions of their fellow jurors, agree or compose their differences, there never could be a verdict rendered. Neither the law nor good public policy forbids such agreement, and it is well settled that such compromise verdict is proper and lawful. Owens v. Missouri Pac. Ry. Co., 67 Tex. 679, 4 S. W. 593; Maverick v. Maury, 79 Tex. 435, 15 S. W. 686.

■ Neither do we think the charge relative to the elimination of counsel for appellant's argument for a "hung jury" without basis in the argument or prejudicial. The whole tenor of the argument was not only a suggestion but an appeal to any juror who might believe from a preponderance of the evidence that the burns suffered by appellee were not the producing cause of his injuries, to never change his mind, to never yield to the interpretations and effect of the evidence by his fellow jurors, but to "stay there forever," and to "stand there till doomsday." Of course, this could but mean to hang the jury, and must have been so understood by every member of the panel.

■ Furthermore, the court only can charge the jury the law relative to the case. The jury must take the law as given by the court in his charge and be governed thereby. No other person can instruct the jury as to the law. We think that the statements of counsel to the jury as to the law covering the findings of fact by a jury was in effect a charge to the jury. Besides, the statements to the jury that a finding of fact by them was "conclusively binding on the court," and that their finding of a fact as true "makes it true, so far as the law is concerned," and that "neither the lawyers nor the court can change your findings, and they are forever the facts, so far as the law is concerned," were incorrect statements of the law. Certainly the rule is well settled, in fact has always been the law, that the findings of a fact by a jury in response to issues submitted may not be disturbed by the courts, when the finding is sufficiently supported by credible testimony, but, where the findings are made without evidence to support them, or where the findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong, then the court not only has the power, but it is his imperative duty, under the law, to set aside the findings. They are not conclusively binding upon the courts, nor do they stand as found forever so far as the law is concerned. It would be a monstrous miscarriage of justice, and in the face of well-established rules, to hold that a fact found by a jury stands forever as found, and that courts are conclusively bound by the finding, regardless of whether it has support in the evidence, or of being so against the great weight and preponderance of the evidence as to be manifestly wrong.

The fact that the court in his supplemental charge to the jury relative to the argument of counsel for appellant also instructed the jury not to consider the argument of counsel for appellee on certain matters because there was no evidence upon which to base the argument shows that the court was impartially endeavoring to guide the trial of the case within the channels of law which should govern same. Of course, the qualification of the court to the bill of exceptions relating to the argument set out supra was not known to the jury, and therefore could not in any way be prejudicial.

■ Appellant's twenty-ninth and thirtieth propositions complain that the charge given by the court in explanation of special Issue No. 18 was a general charge, and therefore error, the case being submitted on special issues; also that said charge was error, in that it indicated to the jury the result of their finding in answer to said issue. These exceptions were duly made to the charge.

Special issue No. 18 reads:

"From a preponderance of the evidence, find whether or not, if plaintiff, Sidney Williams, made claim for compensation for the injury, if any, sustained by him on or about July 17, 1925, within six months following the beginning of incapacity therefrom."

"Answer yes or no as you may find the facts to be."

"In this connection you are instructed that if an employee sustains an injury in the course of his employment as a result of which incapacity to work and labor as defined herein, occurs, and thereafter and following such injury the employer furnishes such employee employment reasonably suited to his incapacity and physical condition, and thereafter such employee labors and works in such employment, without recovery from such incapacity, until such time as he may be discharged by his said employer or said employment terminated, is unable to secure other employment at which to labor because of such injury and incapacity, if any, so sustained, that the period of incapacity in law is to be reckoned from the date of such employee's discharge or the termination of such employment, if any."

The charge is not subject to these objections. It does not indicate to the jury what the effect of their answer to the issue would be, nor is it a general charge. It was a proper and necessary explanation of the term "within six months following the beginning of incapacity therefrom," used in the wording of the issue. Incapacity results from the injury. There is a clear distinction between "accident" and "injury." The "injury" may

develop long after an accident, but still result therefrom within the requirements of the Compensation Law. They are not necessarily concurrent. Texas Employers' Ins. Ass'n v. Fricker (Tex. Civ. App.) 16 S.W.(2d) 390 (writ refused); Texas Employers' Ins. Ass'n v. Wonderley (Tex. Civ. App.) 16 S.W.(2d) 386 (writ dismissed); Texas Employers' Ins. Ass'n v. Herron (Tex. Civ. App.) 29 S.W.(2d) 524 (writ dismissed); Jarrett v. Travelers' Ins. Co. (Tex. Civ. App.) 66 S.W.(2d) 415, 417. Under these decisions, the explanatory charge of the meaning of the language, "within six months following the beginning of incapacity therefrom," was necessary for a proper understanding by the jury of the fact sought to be found by the issue, and in accordance with the law governing the finding of such fact.

 The thirty-first proposition urges that the trial court was without jurisdiction to hear and determine the case, because there was no evidence to show that appellee received his injuries in Jefferson county, Tex., and so the judgment is without support.

This proposition is overruled. We think the evidence sufficiently shows that the accident and resulting injuries were received by appellee in Jefferson county, Tex. Appellee was employed by the Gulf Refining Company at Port Arthur, Tex. He received his injuries at the refining plant in Port Arthur. The case was tried in the Fifty-Eighth district court of Jefferson county, Tex. Dr. Orrill was the physician who looked after the company's injured employees, and who treated appellee. He testified that he had lived and practiced medicine and surgery in Port Arthur for 13 years, that he was duly licensed to practice, and that his license was properly "registered in this county." This testimony could have but one meaning, and that was his license to practice was registered in the county where the case was then being tried—Jefferson county. Dr. Fullbright testified that he had lived and practiced medicine in Port Arthur since January, 1922; that he was duly licensed to practice medicine and surgery in the state of Texas and in Jefferson county. The law, article 4498, R. S. 1925 (as amended by Acts 1931, c. 49, § 2 [Vernon's Ann. Civ. St. art. 4498]), provides that no person shall practice medicine within this state who has not registered his license authorizing him to so practice in the district clerk's office of the county in which he resides. As both Dr. Orrill and Dr. Fullbright testified that they lived in Port Arthur, Tex., and both had their license registered in the county where he resided, it clearly appears by their testimony that Port Arthur is in Jefferson county. Furthermore, this court judicially knows that the city of Port Arthur is in Jefferson county, Tex. Courts take judicial notice of public laws of the state and of all facts therein recited. By Special Acts of the 32d Legislature (1911), chapter 52, the city of Port Arthur was granted a special charter, in which the territory incorporated was described as in Jefferson county, and the charter contained the provision that "this Act shall be deemed a public Act, and judicial notice shall be taken thereof in all courts." Article 6, § 12. Again, by the Acts of the 41st Legislature (1929), chapter 292, Port Arthur was recognized as being "situated in Commissioners' Precinct Number 2 of Jefferson County" (section 1); said act donating the state taxes to the city of Port Arthur for a period of 20 years for the purpose of aiding and building a seawall for the protection of said city against sea floods. Anderson v. Polk, 117 Tex. 73, 297 S. W. 219; 17 Tex. Jur. Evidence, § 9, p. 191; Id. § 13, p. 179.

 The assignment that the court erred in rendering judgment for lump sum compensation is sustained. It is only where the injury results in death or total permanent incapacity that lump sum compensation judgments may be had. Article 8306, § 15, R. S. 1925. The judgment herein being for the loss of certain members, an eye and a hand, the judgment for lump sum compensation was not warranted. But this error does not require that the judgment be reversed and remanded, but may be corrected by reforming the judgment by omitting that provision of same, and requiring the judgment to be paid in weekly installments of $11.67 as found by the judgment, beginning and running from the 28th day of February, 1931, all past-due installments to bear interest at the rate of 6 per cent. from the due date until paid.

All assignments not herein discussed have been considered, and are overruled. The judgment is reformed as above indicated, and, as reformed, is affirmed.