## TRADERS & GENERAL INS. CO. v. DURBIN.

### No. 4918.

Court of Civil Appeals of Texas. Amarillo.
June 20, 1938.

Rehearing Denied Sept. 20, 1938.

Lightfoot, Robertson & Gano, of Fort Worth, for plaintiff in error.

S. D. Stennis and John V. Osborne, both of Pampa, for defendant in error.

STOKES, Justice.

This case arose under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., and is presented here upon a writ of error from a judgment entered by the trial court awarding to defendant in error compensation in a lump sum of $5,751.30, based upon findings of the jury of total and permanent disability. The record discloses that defendant in error was employed by D. R. Tripplehorn as a pumper at an oil well located in Gray County, and that on December 18, 1935, as the result of an explosion of the boiler, he was injured, the injuries consisting of a broken jaw and severe burns about his right hip and both legs. The jury found that plaintiff in error was the insurance carrier; that defendant in error was employed by Tripplehorn; that the injuries were sustained in the course of his employment and resulted in total incapacity. They further found that the incapacity was permanent; that manifest hardship and injustice would result if the compensation were not paid in a lump sum; that the injuries did not result in partial incapacity and that defendant in error had been employed the entire year immediately preceding the date of his injury. They found that defendant in error earned $1,500 during the preceding

year and that his average weekly wage was $28.84.

We are met at the threshold of our consideration of the case with the contention of plaintiff in error that the district court did not obtain jurisdiction for the reason that the award of the Industrial Accident Board was in the nature of an interlocutory order and not a final award. This contention is based upon a provision of the award to the effect that plaintiff in error is ordered to pay to defendant in error $15.92 per week for an indefinite period in the future not exceeding 401 weeks from December 18, 1935, unless changed by subsequent award of the Board. The contention is not based upon that portion of the award which provides "unless changed by subsequent order of the Board" but upon the provision that plaintiff in error is required to pay defendant in error "at the rate of $15.92 per week for an indefinite period in the future not to exceed 401 consecutive weeks from December 18, 1935." The legal theory is based upon the holding in Arter v. Southern Surety Co., Tex.Civ.App., 29 S.W.2d 847. The award in that case was similar to the one entered by the Board in this case. It provided that the claimant was totally incapacitated from December 11, 1928, and that his injury "would continue to so incapacitate him for an indefinite period in the future." He was therefore awarded "compensation at the fixed rate of $12.12 per week for an indefinite period from December 11, 1928, but in no event to continue longer than 401 weeks" from that date. The Court of Civil Appeals held that while the Board determined the injury which the claimant sustained totally incapacitated him for the performance of labor, it did not determine either that such incapacity was permanent or that it would continue as long as 401 weeks, in effect concluding that the award was not such a final award as would support an appeal. A writ of error was granted by the Supreme Court and in passing upon the case, the Commission of Appeals (44 S.W.2d 913) did not pass upon the question of the finality of the award, but disposed of the case on other grounds.

After the Arter Case had thus been disposed of, the case of Middlebrook v. Texas Indemnity Ins. Co., 112 S.W.2d 311, was considered by the Court of Civil Appeals at Dallas and practically the same question arose. The award entered by the Board in that case was in part as follows: "On said date J. J. Middlebrook suffered injury in course of employment, resulting in his total incapacity for performance of labor for an indefinite period in the future, not exceeding 125 weeks, Texas Indemnity Insurance Company is ordered to pay J. J. Middlebrook $9.00 per week for an indefinite period in the future not exceeding 125 consecutive weeks from December 19th, 1935, unless changed by subsequent award of the Board."

While the Middlebrook Case was a suit to mature an award, and not identical in all of its aspects with the case before us, yet the identical principle of law was involved and the question of the finality of such award was thoroughly considered in the able opinion written by Judge Young. The Dallas Court of Civil Appeals came to a conclusion directly in conflict with the conclusion reached by the Court of Civil Appeals in the Arter Case and held the award was final and the District Court acquired jurisdiction upon an appeal from it. Writ of error was dismissed for want of jurisdiction by the Supreme Court, 114 S.W.2d 226, and in doing so it entered a per curiam memorandum opinion in which the failure to pass upon the question of jurisdiction in the Arter Case was explained as being unnecessary because the judgment of the Court of Civil Appeals dismissing the case was affirmed, not for the reason that the award made by the Industrial Accident Board was not final but upon the ground that the Surety Company of New York admittedly was not a party to the proceedings before the Industrial Accident Board and was not an interested party within the meaning of the compensation statute providing for a review of awards made by the Board. It was further stated in the tentative opinion that the opinion in the case of Vestal v. Texas Employers' Ins. Ass'n, Tex.Com. App., 285 S.W. 1041, controlled the disposition of the Middlebrook Case then under consideration and the writ of error in the latter case was dismissed. In the Vestal Case the Commission of Appeals discussed the duration of the jurisdiction of the Industrial Accident Board as provided by the law at that time. While the section of the statute with reference to continuing jurisdiction of the Board (Art. 8306, § 12d) has been amended, Vernon's Ann.Civ.St. art. 8306, § 12d, and the jurisdiction of the Board to some extent limited since the opinion in that case

was rendered, yet the principle involved is not different nor has it in any manner been modified. It was held in that case, in effect, that the statute contemplates that at all times the matter of review of the award within the limitations fixed by the act because of a change of conditions with reference to the injury and payment of compensation or because of mistake or fraud is within the province of the Board, but such power to review can only be exercised by it while its jurisdiction continues. It is said that [page 1044]: "Where there has been an appeal, undoubtedly it has lost such power of review, and we are also of the opinion it has as clearly lost such jurisdiction and power where by reason of default in the matter of appeal and performance a suit has been filed in the proper court having jurisdiction to enforce the award. The Court of Civil Appeals was right in holding that the effort of defendant in error to have the board to review its award by a petition filed after the institution of the present suit came entirely too late, and at a time when the board had no further jurisdiction over its award."

While this holding is based upon the provisions of the statute and not a provision inserted by the Board in its award, yet it cannot be said that the Board's decree could in any respect augment or modify the provisions of the law.

█ In view of the provision of the statute which gives to the Board jurisdiction to review its awards and make such changes and alterations as may be demanded by future events and conditions, we construe the provision complained of to mean that plaintiff in error is required to pay to defendant in error the weekly installments specified in the award for the full period of 401 weeks unless, in the exercise of its continuing jurisdiction, the Board should find and determine from subsequent events or conditions the installments should be modified or the manner of payment changed. Under the statute the Board has power to modify its awards and make such changes in the manner of their payment as may be required or justified by subsequent developments and the provision of which complaint is here made is nothing more than an unnecessary recital in the award of a condition already provided by the law.

█ Our conclusion is that, under the provisions of the act, the Board had continuing power to review its award within the statutory limits and that it could not increase nor diminish its power so to do by any provision or condition which it may insert in its award. We conclude further that such power as it may have of reviewing and changing its award is lost when an appeal is taken under other provisions of the act. It follows, therefore, that in our opinion the contentions of plaintiff in error that the district court did not acquire jurisdiction in this case are without merit and they are accordingly overruled.

The next contention presented by plaintiff in error is that the court erred in submitting to the jury the question of defendant in error's total and permanent incapacity because the evidence did not warrant the submission of that question. It further contends in this connection that the answers of the jury to the special issues in which they found defendant in error was totally and permanently incapacitated were so clearly against the preponderance of the evidence as to show they were the result of bias and prejudice on the part of the jury. In many cases the courts have held that total incapacity as used in the Workmen's Compensation Act means that the injuries of the employee must be such as to disqualify him from performing the usual tasks of a workman to such an extent that he cannot procure and retain employment. Lumbermen's Reciprocal Ass'n v. Wells, Tex.Civ.App., 283 S.W. 208; Southern Surety Co. v. Lacoste, Tex.Civ.App., 7 S.W.2d. 197. The record shows that defendant in error was 51 years of age; that he was severely injured in the explosion of the boiler and that he was unconscious for several days thereafter. He remained in the hospital 89 days and was under the treatment of physicians for some time thereafter. His jaw was broken in two places and a portion of the jaw bone was removed. The fracture in his jaw had not reunited at the time of the trial, some eighteen months after the injury, and the testimony warrants the conclusion that it will never heal or reunite. He is unable to eat solid foods and had continuously lost weight from the time of the injury until the trial, his weight during that time having diminished from 154 to 126 pounds. It was further shown that his eyesight was seriously impaired, rendering him unable to read print smaller than the usual headlines in the newspapers. He

suffered continuously with headaches, and these conditions were not present before the injury. It was shown that the injury to his hip was serious, the scar at the time of the trial being from 1 to 3 inches wide, 12 inches in length, and indicating a deep and severe wound. His legs had been severely burned, the scars were afflicted with recurring ulcers, and it was shown without dispute his right leg would not sustain his weight. Before the injury he was strong and healthy and the record shows he worked continuously until he was injured.

█ It has many times been held by our courts that if, discarding all adverse evidence and giving credit to all the evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to him which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff, the evidence is sufficient to support the verdict of a jury in his favor. Cartwright v. Canode, 106 Tex. 502, 507, 171 S.W. 696; Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S.W. 585; Pennsylvania Fire Ins. Co. v. Waggoner Estate, Tex.Civ.App., 41 S.W.2d 340.

█ Tested by this familiar rule we think the evidence was such as to require the court to submit the special issues and that it was amply sufficient to support the findings of the jury. Two physicians who testified for plaintiff in error expressed their opinion, based upon the conditions found by them when they examined defendant in error, that he was able to perform some kinds of work. They said they believed he could do light physical labor, such as night watching in the oil field or ordinary dairy work or firing a boiler where gas was used for fuel, but they did not express the opinion nor reveal conditions under which the conclusion would be warranted that defendant in error could obtain employment in the suggested lines of work nor intimate that, if he should obtain it, he could retain it and continuously engage in the duties involved. The least that can be said of the evidence is that it was sufficient to require the submission of the issues to the jury, and we have found nothing in the record which indicates the jury was actuated by bias or prejudice. These assignments are, therefore, overruled.

The next question presented by plaintiff in error involves conduct, rulings and comments of the trial judge during a controversy between counsel as to the admissibility of the testimony of the witness, Dr. Kelly. He was introduced as a witness by defendant in error. He had not treated defendant in error but had examined him on two occasions several months apart. When he took the witness stand counsel for plaintiff in error requested permission to conduct a voir dire examination in order to determine whether or not the opinions and diagnosis to be proffered by him would be based upon subjective symptoms, that is, information given and statements made to him by defendant in error at the time he made the examinations. The request was granted and, after considerable examination, he was asked if any opinion he should express as to the physical condition of defendant in error would be based to any extent on subjective symptoms and the objective symptoms which he discovered in his examination. His answer was: "Well, the objective." He was then examined by counsel for defendant in error, and during the examination numerous objections were interposed by counsel for plaintiff in error, the basis of which were that the doctor's testimony indicated his answers to some of the questions revealed his testimony was based to some extent upon subjective symptoms. Upon cross-examination counsel for plaintiff in error propounded to him a number of lengthy questions concerning the fact or possibility of his opinion and answers being based upon subjective symptoms which seem to have confused the witness to some extent, whereupon the trial judge suggested that he propound the question, which he did, as follows: "Doctor, independent of what Mr. Durbin may have told you, and separate and apart from that, then would your opinion be the same, based wholly and solely on objective symptoms?" To which the witness answered: "Yes, sir."

Counsel for plaintiff in error objected to the propounding of the question by the court in the presence of the jury and stated, in effect, that, under the law, the trial judge is not permitted to propound questions to witnesses in the absence of a finding by the court, supported by the record, that the attorneys trying the case are incapable of protecting the interests

of their client, and stated that Judge Ramsey, while a member of the Supreme Court, and speaking for the Supreme Court, had said that: "Verily, to the jury the Court is the Lord's annointed, and his remarks before the jury should therefore be confined always to 'yea, yea' and 'nay, nay'."

The trial judge then made the following remark: "I challenge you to show me any decision by any court which holds that the court under no circumstances is permitted to ask the witness a question. I know there are exceptions and that the court may go too far and may ask questions that are not proper, but there are circumstances when the court is permitted to ask questions."

Considerable colloquy ensued which resulted in the exceptions to the action of the court in overruling plaintiff in error's motion to declare a mistrial, counsel contending that the question propounded and remarks indulged in by the court inevitably had the effect of influencing the jury to the prejudice of plaintiff in error.

■ The witness said several times that he did not base his diagnosis upon subjective symptoms, but that his opinions and diagnosis were based upon objective symptoms which could be observed with little difficulty. It is true he sought to qualify some of his answers by explanations which he was not permitted to make, but we see nothing in all this which, under the circumstances, could be said to be improper conduct of the trial judge or that would in any way be likely to influence or prejudice the jury against plaintiff in error. While, under our system, the trial judge should refrain from expressing his opinion as to the meaning or weight of the evidence, and the cloture rule is sometimes carried to extreme lengths, yet we are not in accord with the contentions of plaintiff in error that under no circumstances is the trial judge permitted to propound questions to witnesses nor that he is laboring under an injunction to confine his remarks during the trial to monosyllables such as "yea, yea" or "nay, nay". During the discussion between the court and counsel of the question of whether or not the witness had given evidence that his opinion was based in part upon subjective symptoms the court remarked: "I believe the rule is this, or at least some of the courts have held this, that where

it is shown that the witness's opinion is based partly upon subjective symptoms, his testimony is not admissible; that is, where it is shown; but that is not shown here."

■ Objection was made to this statement of the court upon the ground that it was a comment upon the weight of the evidence. An analysis of the statement will show that the remark had reference to what was shown by the record of the testimony and was not a comment upon the weight of the testimony that had been given by the witness. It was made in the course of a lengthy colloquy between the court and counsel on both sides, interspersed with answers of the witness; and the statement of the trial judge, in connection with contrary suggestions of counsel, clearly reveal the consciousness of the court that the witness may have given an answer to a question concerning the subject matter which had escaped the court's attention. The remark had reference to whether or not the witness had stated that his testimony was based in part upon subjective symptoms rather than whether or not what the witness had said was susceptible of the construction that it was based in part upon subjective symptoms. After the incident had closed the court instructed the jury to disregard what had passed between him and counsel and not consider it for any purpose whatever because it was a matter between the court and counsel.

We have given these assignments thorough consideration and it is our opinion the actions and conduct of the court were not subject to the exceptions and these assignments are overruled. First State Bank v. Hare, Tex.Civ.App., 152 S.W. 501; D. H. Fleming & Son v. Pullen, Tex.Civ. App., 97 S.W. 109; Indemnity Ins. Co. of North America v. Williams, Tex.Civ. App., 69 S.W.2d 519; Texas Central Ry. Co. v. Stewart, 1 Tex.Civ.App. 642, 20 S.W. 962.

■ Objection was made and exception reserved to the admission of the testimony of Dr. Kelly because it is asserted his testimony shows that his diagnosis and opinions expressed were based upon subjective symptoms; that is, upon information given and statements made to him by defendant in error during the physical examinations. The rule is that, under the conditions under which the examinations were made in this case, such testimony is not admissible when based up-

on information given by the injured employee to the physician during the examination, being classed as self-serving and hear-say testimony. We do not agree with plaintiff in error, however, that Dr. Kelly's testimony showed his opinions and diagnosis were so based. In the first portion of his direct examination the doctor stated positively that his opinions would be based upon objective symptoms and at numerous times during his examination he stated that it was not necessary for him to resort to subjective symptoms in order to arrive at a definite conclusion and that his conclusions were based upon what he could see and feel and not upon what defendant in error told him. It is true that in the confusion which ensued from colloquies and controversies the witness sought to explain matters in reference to certain phases of his testimony, and once or twice stated that his opinions were based in part upon subjective symptoms. He frequently sought to explain what he meant by this, however, and was not permitted to do so. One question propounded to him by counsel for plaintiff in error as to whether or not in forming his conclusions he was influenced in any degree, however slight it may be, by anything defendant in error had told him about his condition was answered by him: "Well, I might have, but—". At this point he was interrupted by counsel with an objection to the court and a motion to exclude all of his testimony concerning his opinions because the answer showed it might have been based in part upon subjective symptoms. What the witness would have stated as an explanation of his answer, the record does not show because the witness was not permitted to express it. When the entire testimony is read it is clearly revealed that his opinions were based upon the objective symptoms and not upon what the patient told him. The rulings and actions of the trial court in respect to these matters were not erroneous.

 Other propositions complain of the action of the court in submitting to the jury, and the findings of the jury upon, the question of a lump sum award, it being contended that defendant in error did not discharge the burden resting upon him to prove that manifest hardship and injustice would result if payments of compensation were made to him in weekly installments. The evidence shows that de-

fendant in error was an unmarried man, 51 years of age, and had no family nor relatives except an unmarried sister; that he had no home nor any property or income. It was further shown that the fracture of his jaw would probably never heal and that, while the wounds caused by the burns on his legs had apparently healed, ulcers were continually forming upon the scars, and that it had been eighteen months since he was injured. He had no one to take care of him and his condition is practically helpless. The testimony showed that from the weekly payments he could expect nothing more than a bare living, and, as they would not continue beyond 401 weeks, he would probably be destitute and helpless when they terminated. On the other hand it was shown that a lump award would enable him to purchase a small farm which he could let to a family under conditions in which he would have a home and some one to take care of him. The jury found that manifest hardship and injustice would result if the payments were made in weekly installments and we think their finding was amply supported by the evidence. These assignments are, therefore, overruled.

 The court charged the jury that the terms "total incapacity" and "total disability" as used in the charge did not imply an absolute disability to perform any kind of labor; but a person disqualified, as a result of his injury, to perform the usual tasks of a workman in such way as to enable him to procure and retain employment for which he is fitted or which he is capable of performing, is regarded as being totally incapacitated or totally disabled. Plaintiff in error excepted to the definition as given by the court upon a number of grounds, but the definition given is in almost the identical words requested by plaintiff in error, and if there was error, it was invited and requested by it. Plaintiff in error is, therefore, in no position to complain of the form of the definition and its exceptions and assignments in that respect are overruled.

Other assignments complain of the inclusion in the judgment of the value of the use of a two-room house which was furnished to defendant in error. The evidence shows the house belonged to his employer and he was not charged any rental. It was located on the lease and was of the rental value of $10 per month.

We think the court was justified in including the value of its use in the award and that no error is shown in this respect.

What we have said disposes of all of the assignments of error and, finding no merit in any of them, the judgment of the trial court is in all respects affirmed.