**TEXAS EMPLOYERS INS. ASS'N v. LEWIS.**

No. 2880.

Court of Civil Appeals of Texas. Eastland.

June 29, 1951.

Rehearing Denied Sept. 7, 1951.

three to four hundred pounds; that he accidentally stumbled and fell and the "Christmas tree" fell against the lower part of his back, causing him to be totally and permanently incapacitated from doing manual labor. Of course, in deciding the question of whether or not there is sufficient evidence to raise the issue of partial, as distinguished from total, incapacity, we are required to look only to testimony that may tend to show that claimant was partially incapacitated. Issue 8 and the accompanying definition are as follows:

"Do you find from a preponderance of the evidence that W. E. Lewis, Jr. has sustained or will sustain partial incapacity as a natural result of said accidental injuries, if any, received on or about February 26, 1950?

"By the term 'partial incapacity' as used herein is meant such physical condition of the injured employee as that he is able to both procure and perform work at some occupation suitable to his existing conditions, but less remunerative or requiring less physical strength than the work he was engaged in at the time of the injury."

Claimant testified that when he fell there was a sharp pain across his back; that the driller told him to sit down and rest a while; that he told the driller that he thought he had just wrenched his back and "I thought it would be all right;" that the tool pusher offered to take him to town and claimant "told him he didn't think it was hurt that bad." Appellee testified that he was injured on February 26, 1950 but that he stayed on the job until March 10th. Although claimant testified that from February 26th to March 10th he didn't do any heavy work; that he did not lift anything and that others on the job did the hard work for him, there is testimony from the tool pusher to the effect that during said period each of the workmen appeared to be doing his job in the usual manner. The tool pusher testified that he did not notice anything unusual about the claimant during said period; that he did not notice that claimant was not doing any lifting or was not doing his usual work; that after claimant was injured the rig was moved to a new

Max Addison and Crenshaw, Dupree & Milam, all of Lubbock, for appellant.

Bob Huff, J. H. Splawn, Jr., County Atty., Lamesa, for appellee.

GRISSOM, Chief Justice.

This is a Workmen's Compensation case in which judgment was rendered for the claimant for total and permanent disability. The insurance carrier has appealed. The judgment was based on a jury verdict. Appellant's principal contention is that the court erred in overruling appellant's motion for a mistrial and rendering judgment for claimant because the jury failed to answer issue 8, which submitted the question of partial incapacity. Appellee's answer is that the evidence was insufficient to raise the issue of partial incapacity and, therefore, failure to answer it was immaterial, and that appellant waived the right to complain of such failure.

We are convinced the evidence was sufficient to raise the issue of partial incapacity. Claimant alleged he was injured on February 26, 1950, while he was carrying a "Christmas tree" which weighed

location; that the witness was present when the rig was moved and that Mr. Lewis helped in that work. He was asked: "Q. So far as you noticed, did he carry his end of the load, and do his work? A. As far as I can recall, he did."

Brown testified that he did not know that the other workmen on the rig were carrying the load for Mr. Lewis; that he did not recall that after his injury Lewis made any complaint to him about feeling bad or being sick; that during said time the witness did not see anybody loafing on the job; that he was the boss over the driller; that if the driller was letting a man loaf on the job and not do his work that he would fire either the man doing the loafing or the driller.

Claimant testified that when he was injured he was working as a rough neck; that he did not do anything until about three weeks before the trial, which began on October 4, 1950; that he drove a taxi for about two weeks; that he went back to work the next day after his injury and stayed on the job until the well was completed on March 10th; that when the rig was moved to a new location he stayed out there on the job; that he took a rake and leveled off the ground around there; that he was on the job and drew his pay during the time the rig was moved to a new location; that he was drawing the same pay after February 26th that he drew before that time and that he was on the job eight hours per day. He testified that he did not lose any weight; that during the period of about two weeks that he drove a taxicab he worked twelve hours per night.

Dr. Hale testified, in substance, that he made X-ray pictures of claimant's spine; that they showed no abnormality; that he examined claimant on July 11, 1950; that he found no deviation of the spine and no tenderness, except in the fifth lumbar and first sacral vertebra where appellee had a tumor; that he found no evidence of muscular spasm or involvement; that his reflexes were normal; that there was no evidence of numbness; that, in his opinion, claimant was able to obtain and retain employment at hard manual labor.

In Texas Employers' Ins. Ass'n. v. Kelly, Tex.Civ.App., 71 S.W.2d 901, 904, Writ Dis., the court held that the issue of partial incapacity was raised by testimony of doctors comparable to that mentioned above. The court said: " * * * a jury would have been warranted by proper reasoning, inferences, and deductions in finding partial incapacity if that issue had been submitted to them. In the consideration of the evidence there is a field for thought and conclusion by the jury that appellee was injured but only partially incapacitated for a part or all the time. It is no answer to say that, since the jury found total incapacity, it would be presumed it would have found against appellee on the issue of partial incapacity. * * * Had the issue of partial incapacity been submitted, it might have found thereon in favor of appellee."

In Traders & General Ins. Co. v. Wright, Tex.Civ.App., 95 S.W.2d 753, 757, affirmed, 132 Tex. 172, 123 S.W.2d 314, this court said:

"We think the issue of partial incapacity was raised by the evidence. Plaintiff's witness Dr. Parmley testified: 'In my opinion he isn't able to do any hard work. He might do bookkeeping, or things like that if the place is well ventilated.'

"The plaintiff testified:

" 'Q. Have you made any money since the 21st of November, 1933? A. Yes.

" 'Q. How much have you made? A. Since the 1st day of May I have averaged about $30.00 a month.

" 'Q. For what is that—where did you get that? A. From the local Oil Field Workers' Union.

" 'Q. You are Secretary of that? A. Yes.

" 'Q. You ran for County Treasurer? A. Yes.

" 'Q. You made a campaign of that county down there? A. Yes.

" 'Q. What kind and character of work is that you have with the local Oil Field Labor Union? A. Bookkeeping work and secretarial work.

" 'Q. How much time—how many hours a week do you have to spend at that job?

A. Two or three hours a day, six days a week.'

"Dr. McKnight, a witness for defendant, testified as follows: 'He wasn't totally and permanently disabled, from my standpoint. He would always be tubercular, but with good care I shouldn't see why he couldn't go ahead and do a moderate amount of work, taking care of himself, of course. He should have done that before.' "

■ It is admitted that the issue was raised by the pleadings. We believe the testimony referred to is sufficient to raise the issue of partial incapacity. See Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S.W. 585, 587; Pennsylvania Fire Ins. Co. v. W. T. Waggoner Estate, Tex.Civ.App., 41 S.W.2d 340, affirmed, Tex.Com.App., 39 S.W.2d 593; Traders & General Ins. Co. v. Durbin, Tex.Civ.App., 119 S.W.2d 595, Writ Dis. The judgment must, therefore, be reversed, unless, as appellee contends, appellant waived any objection to the failure to answer said issue.

When the verdict was returned into court there was no objection to its receipt. Later, appellant filed a motion for mistrial because the verdict was incomplete by reason of the failure to answer issue 8. There was a hearing on the motion for new trial and evidence adduced as to what happened when the verdict was received. Appellee's counsel testified, in effect, that, as he recalled, the judge started to read the issues and, after he had finished reading the second issue, appellant's counsel suggested that "in view of the fact that all parties had copies of the special issues, that the judge dispense with the reading of the special issues and just recite the answers as given by the jury;" that, thereupon, the judge omitted reading the issues and only read the answers; that appellee's counsel was looking for a copy of the issues and in the interim was writing the answers down on a tablet; that the court said special issue No. 8 was not answered; that he heard no objection to the failure to answer issue 8.

Appellee's said counsel was asked if it were not true that when the court started to read the issues appellant's counsel stated it was agreeable to him for the court to read only the answers and that he agreed thereto. He replied that he made no statement; that he was trying to find a copy of the issues. He was asked if the court did not inquire of him when appellant's counsel suggested that only the answers be read, "Is that all right?" and he answered in the affirmative or nodded his head. To which he replied, "If I did, I don't recall it." The court stated that he did remember, "I felt, and was of the opinion, that the minds were in accord, of all of us, that I should not read the questions." The court further stated that he proceeded on the theory that everybody had come to an understanding that there was no necessity for reading the questions; that no question was raised by anyone about the verdict "and the court didn't catch it."

■■ There was no evidence, nor intimation from the testimony that appellant's counsel knew when he made the suggestion that appellee's counsel did not have a copy of the issues. There is no intimation that appellant's counsel then knew, or could have known, that issue 8 was not answered and, therefore, there is no reason to suspect that appellant's counsel was attempting to "entrap" the court, as claimed by appellee. The court stated he was acting mechanically in reading the answers and did not notice, or then realize, the significance of the failure to answer issue 8. It seems to us that it is reasonable to presume that all the attorneys were in the same situation until appellant's counsel, on the following morning, raised the question. It is evident from the statement of the distinguished trial judge that he did not find that appellant thereby waived his right to complain of the failure of the jury to answer the issue. Waiver is commonly briefly defined as an intentional relinquishment of 'a known right. There is nothing in the record that would sustain a finding that appellee's counsel intended to waive the right to complain of the failure to answer said issue. See Texas Employers' Ins. Ass'n v. Horn, Tex.Civ.App., 75 S.W.2d 301, 302; Texas Rules of Civil Procedure, rule 295; 67 C.J. S., Officers, § 69, pages 299, 301. See also

Traders & General Ins. Co. v. Daniel, Tex. Civ.App., 114 S.W.2d 336, 338; Copeland v. Brannan, Tex.Civ.App., 70 S.W.2d 660, 662; Traders & General Ins. Co. v. Nunley, Tex.Civ.App., 80 S.W.2d 383, 386, Writ Ref.

The judgment is reversed and the cause remanded.