PENNSYLVANIA FIRE INS. CO. v. W. T. WAGGONER ESTATE.

No. 3331.

Court of Civil Appeals of Texas. Amarillo. Dec. 11, 1929.

Rehearing Denied Jan. 8, 1930.

Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for plaintiff in error.

O. O. Franklin, of Vernon, for defendant in error.

JACKSON, J.

This suit was instituted in the district court of Wilbarger county, Tex., by the plaintiff, W. T. Waggoner, trustee of the W. T. Waggoner Estate, against the defendant Pennsylvania Fire Insurance Company, to recover the sum of $2,000 on an insurance policy issued by the defendant securing plaintiff against loss or damage by fire to a 1925 model Reo Speed-Wagon.

The plaintiff alleges that on March 30, 1927, the defendant issued its certain policy of insurance, by the terms of which it promised to pay to the W. T. Waggoner Estate a sum not to exceed $2,000, in the event a certain model 1925 Reo Speed-Wagon belonging to said estate was damaged or lost by fire.

That said policy of insurance was in full force and effect on January 28, 1928, on which date said Reo Speed-Wagon was, without fault of the plaintiff, totally destroyed by fire.

That the plaintiff, within the time and manner provided by the policy, promptly notified the defendant of the loss and filed with the defendant proof of loss and claim on blank forms furnished by the defendant and that plaintiff did everything provided in said policy as required. That the cash market value of said Reo Speed-Wagon at the time of its destruction by fire was the sum of $2,000, which amount was specifically covered by said policy. That the defendant, though often requested, has refused and wholly failed to pay the defendant said sum or any part thereof for the loss and destruction of said Reo Speed-Wagon.

The defendant filed a plea in abatement, to which the plaintiff replied, but as no question is presented involving the disposition of the plea in abatement, no further notice will be taken thereof.

The defendant answered by general demurrer and general denial, and for special answer alleged that if plaintiff held such policy of insurance as alleged, that it contained, among other provisions, the following: "In case the insured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire, and failing, for fifteen days, to agree upon such umpire, then on request of the assured or this company, such

umpire shall be selected by a judge of a court of record in the county and state in which the property insured was located at the time of the loss. The appraisers shall then appraise the loss and damage, stating separately sound value and loss or damage to each item and failing to agree, shall submit their differences only to the umpire. An award in writing so itemized of any two when filed with this company shall determine the amount of sound value of loss or damage. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

That shortly after the alleged loss, it placed the report thereof in the hands of its adjuster, who, after going into the matter, was unable to agree with the assured as to the amount of loss and damage. That the defendant then demanded an appraisal in writing, as required by the policy, and both plaintiff and defendant agreed to submit the matter of the damage or loss to appraisers. That plaintiff selected Bradford Hancock and the defendant selected John W. Barker, who were duly appointed as appraisers, in writing, on May 10, 1928. That said appraisers selected Ray Puckett as umpire, who agreed to act as such. That the appraisers undertook to determine the amount of the loss and were unable to agree, and their matters of difference were submitted to the umpire and an award was agreed to on May 22, 1928, in which the sound value of the Reo Speed-Wagon immediately preceding the loss was agreed to be $600 and that the damage amounted to $600. That an award showing said loss and damage was duly made, signed by Appraiser J. W. Barker and Umpire Ray Puckett, and was duly filed with the company, and on July 12, 1928, the defendant company issued and delivered its check to the W. T. Waggoner Estate in the sum of $600 in payment of the loss in accordance with the award of the appraisers, but that said draft was refused by the plaintiff.

That the liability of the company under said policy became fixed, by reason of said appraisal, at the sum of $600. That since said award, the defendant has been ready, willing, and able to pay same in accordance therewith, and is now ready, willing, and able to pay to the plaintiff the sum of $600 and tenders to the insured, into the registry of the court, said sum, asks that plaintiff accept it in full satisfaction of the claim, and prays that the court limit defendant's liability to said amount.

The plaintiff, by supplemental petition, in reply to the defendant's answer, pleaded, in effect, that the defendant made no bona fide attempt to agree with the plaintiff as to the amount of the loss and made no tender to the plaintiff of any amount prior to the purported arbitration alleged by it. That said purported arbitration was void and of no force and effect, was not conducted in accordance with the terms and provisions of the policy of insurance sued on, and the proceedings therein were not fairly and impartially conducted and should be held for naught. That plaintiff's cause of action arose sixty days after notice of loss, which was given on March 22, 1928, and is entitled to interest on the principal provided in the policy at the rate of 10 per cent. per annum from and after said date.

In response to special issues submitted by the court, the jury found, in effect, that the appraisers who made the award on the arbitration were partial to the insurance company in fixing the amount of damages at $600; that said sum was grossly inadequate to compensate plaintiff for the loss by reason of the destruction by fire of the Reo Speed-Wagon; that the reasonable market value of the Reo Speed-Wagon involved in the suit immediately before it was burned was the sum of $1,640. On these findings the court entered judgment that the plaintiff have and recover from the defendant the sum of $1,640, with interest thereon at the rate of 6 per cent. per annum from May 22, 1928, until paid, and the award of the arbitrators was adjudged void and held for naught. From this judgment, by writ of error, the insurance company, hereinafter called appellant, prosecutes this appeal.

The appellant, by several assignments which we will consider together, challenges as error the action of the trial court in refusing to direct a verdict as requested, limiting the appellee's recovery to the sum of $600, the value of the loss and damage determined by the appraisers and reported in their award, and in submitting to the jury the value of the Speed-Wagon or truck at the time of the destruction thereof by fire, the inadequacy of the amount of the award of $600 made by the appraisers for the loss and damage, and the bias or partiality of the appraisers in making the award, because the testimony presented no issue of fact to be submitted to the jury, and hence the court should have peremptorily instructed a verdict for appellant.

The record discloses that the appellant issued to appellee a policy on March 30, 1927, insuring the Speed-Wagon of appellee in a sum not to exceed $2,000, against loss by fire. That an additional 10 per cent. of the regular premium was charged to void the three-fourths value clause in the policy and the 2 per cent. monthly depreciation clause contained in the policy. That just before the policy was issued, an agent of the appellant inspected the Speed-Wagon, and that at the time the policy was issued, the market value of the truck was $2,000. That at the time the truck was totally destroyed by fire on January 28, 1928, it had been run but little since

the policy was issued and was practically in the same condition when destroyed as it was when the policy of insurance was issued, except the appellee had placed on the truck five new tires, one for each wheel and one spare, and that said new tires cost $450.

That proof of the loss of the truck by fire was made and the receipt thereof acknowledged by the appellant on March 23, 1928, and it referred the adjustment of the amount of the loss to R. R. Moore, an insurance adjuster.

Mr. Moore, a witness for appellant, testified that in his effort to adjust the amount of the loss, Mr. Kolp, a representative of appellee, stated that in his opinion the cash market value of the truck at the time it was burned was $2,000. That witness did not feel that the truck had a value of $2,000, which fact would have to be established before appellant would be liable for that amount. That no agreement was reached. That under the terms of the policy, the appellant demanded an appraisement of the value of the loss and damage, by appraisers to be selected under the provisions of the insurance contract. That appellee selected Bradford Hancock, that appellant selected J. W. Barker, and they, together, selected Ray Puckett as umpire. That J. W. Barker, the appraiser appointed by appellant, and Ray Puckett, the umpire of the appraisers, on May 22, 1928, made an award of the sound value and actual loss and damage in the sum of $600, which amount was reported to appellant. The appellant also introduced in evidence the sworn proof of loss made by appellee, in which it is stated that the actual cash market value of the truck at the time of its destruction was $2,000. Mr. Barker, the appraiser appointed by appellant, testified, among other things, that he assessed the value of the truck at $400. That he arrived at that figure from second nature. That trading in automobiles was second nature with him and $400 was as much as he thought the truck was worth. That he never saw the truck before it was burned, did not know what condition it was in, and did not know what kind of tires it had on it except what he was told by Mr. Hancock. Mr. Puckett, the umpire, testified that all he knew about the truck was what Mr. Barker represented to him and what he was told by Mr. Hancock. That he never saw the truck, did not know what condition it was in and did not know how many miles it had been driven, did not know what kind of casings it had on it, but knew that it had been used for a hay truck, and he was considering that it was a secondhand truck bought in 1925. Mr. Hancock, the appraiser appointed by appellee, testified that he went from his home in Vernon to Wichita Falls and had a conversation relative to the value of the truck with Mr. Barker. That he and Mr. Barker selected Mr. Puckett as the umpire. That he did not agree with Mr.

Barker or Mr. Puckett as to the value of the truck at the time it was burned. That Mr. Barker first estimated the value at $400 and then agreed to Mr. Puckett's estimation of $600. That he tried to tell them that a truck would not depreciate like a car, as it was bought for service and not for looks. That they stated if they were going to buy such a truck they would not give over $400 for it. It did not make any difference what kind of condition it was in or what kind of tires it had on it.

The testimony shows that the appellee bought the truck new for the sum of $2,600, and that it was totally destroyed by fire.

■ "This court, speaking through the late Chief Justice Brown, in the case of Wininger v. Railway, 105 Tex. 56, 143 S. W. 1150, announced the correct rule when testing the probative force of the evidence when it said: 'If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff'—then there was evidence to support their verdict. The same rule was announced by this court in the case of Cartwright v. Canode, 106 Tex. 507, 171 S. W. 696." Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S. W. 585, 587.

"The statement in 'proof of loss' and the jury's finding in respect to 'motors, dynamos,' etc., both rest upon the fact or assumption of total loss, and the 'proof of loss' statement, at least when supported, as it is, by corroborating inferences from Ray's testimony, is some evidence of total loss. Hence we have a case of two estimates of value— one made in the policy a day or two before the fire, and one made in the 'proof of loss' some 83 days after the fire—conflicting to the extent noted. It cannot be said that either is wholly without probative force, and that therefore the jury's finding is without 'any evidence.'" Great American Ins. Co. v. D. W. Ray & Son (Tex. Com. App.) 15 S.W.(2d) 223, 226.

■ Under these authorities and the testimony disclosed by the record, we are of the opinion that the court was authorized to submit to the jury the issue of the market value of the Speed-Wagon at the time it was destroyed by fire and that the jury was warranted in finding that the market value thereof was $1,640.

■ If the market value of the Speed-Wagon at the time it was destroyed by fire was $1,640, the finding of the jury that the award of $600 was grossly inadequate was amply supported by the testimony. "The inadequacy of the award was an important factor, entitled to be considered in determining the bias and prejudice of the appraisers," and

whether the appraisers were competent and disinterested was an issue of fact for the jury to determine. Royal Insurance Co. v. Parlin & Orendorff Co., 12 Tex. Civ. App. 572, 34 S. W. 401, 403. Also Security Insurance Co. v. Kelly (Tex. Civ. App.) 196 S. W. 874.

■ The testimony in the record shows, without contravention, that neither of the appraisers signing the award, nor the one who refused to sign, ever saw the truck, made any inquiry as to the miles it had been run, as to the care it had had, or as to its condition at the time it was destroyed. The two who signed the report based their estimate of the value "on second nature" and the fact that it was a secondhand truck that had been used for hauling hay, and their attitude of indifference as to the condition the truck was in or the tires it had on it, with other circumstances, considered together with the inadequacy of the amount of the award, is sufficient to support the finding of the jury on the issue of bias and prejudice.

■ "The policy by its terms required the selection by both parties of competent and disinterested appraisers. Appraisers selected in such cases are to act in a quasi judicial capacity, and should be free from all partiality and bias in favor of either party so as to do equal justice between them. Being selected by the parties to act instead of the court, they must, like the court, be impartial and nonpartisan. An appraiser, to be disinterested, must not only be without pecuniary interest, but he must also be without prejudice against or bias in favor of either party. The award relied on by defendant in this case purported to be the act of said Hartshorn and the umpire, Smith, only, and was, according to the above finding of the jury, invalid. For such reason it did not preclude an investigation and determination by the court of the amount of plaintiff's loss and the extent to which defendant was liable therefor." Milwaukee Mechanics' Ins. Co. v. West Development Co. (Tex. Civ. App.) 275 S. W. 203, 204; Id., 115 Tex. 361, 282 S. W. 562. Also Delaware Underwriters et al. v. Brock, 109 Tex. 425, 211 S. W. 779.

■■ Appellant challenges as error the action of the trial court in refusing to give its requested charge which reads: "The term 'gross inadequacy' as used in the charge of the Court means such a sum as would indicate and show a total disregard for the truth and the deliberate idea to injure the plaintiff."

· Ordinary words of simple meaning need not be defined, but only terms which have such a distinct and fixed meaning in law that an ordinary person would not readily understand. In our opinion, "gross inadequacy," as used in the court's charge, under the facts revealed in this record, did not require a definition. Dunlop Tire & Rubber Co. v. Teel (Tex. Civ. App.) 14 S.W.(2d) 104; McCleskey v. McCleskey (Tex. Civ. App.) 7 S. W.(2d) 657; Stanton v. Boyd (Tex. Civ. App.) 299 S. W. 321. The definition requested by appellant is, in our opinion, incorrect, as the term as used by the court, we think, means a lack of fair and intelligent consideration, shocks the sense of justice, and is entirely unreasonable.

The judgment is affirmed.