## HULSEY v. PATTERSON.

### No. 4952.

Court of Civil Appeals of Texas.
Amarillo.

Nov. 7, 1938.

Ayres & Ayres, of Floydada, for appellant.

Winfred F. Newsome, of Floydada, for appellee.

STOKES, Justice.

This is a suit for damages growing out of a collision between a motor truck owned and operated by appellee and an automobile owned by appellant. The record discloses that on the 20th of August, 1937, at a point in Floyd County, some three or four miles northwest of Floydada, late in the evening, appellee was driving his truck from Lockney to Floydada. There were three other persons with him in the truck and, upon reaching the point indicated, his gasoline became exhausted and the motor of his truck stopped. Upon discovering he was out of gasoline, appellee steered the vehicle to the right and when it came to a stop a portion of it was off of the paved portion of the highway, but the left rear corner and the left rear wheel were protruding over and resting upon the paved portion. Appellant was traveling in his automobile in the same direction and, before reaching appellee's truck, another

automobile, with its lights burning, appeared some distance down the highway, approaching from the opposite direction. Appellant did not discover appellee's truck until he was within a few feet of it and upon discovering it, he immediately turned his car to the left in an effort to prevent a collision with it. His car struck the protruding corner of the truck, which cut its way through the right side of the body of appellant's automobile, resulting in serious damage to its right side. Immediately after colliding with the truck, appellant's car came in collision with the automobile that was approaching from the opposite direction, causing considerable damage to the left rear portion of appellant's car.

■ Appellant alleged that appellee did not at the time have the rear of his truck equipped with a red light as provided by Sec. 9 of Article 827a of Vernon's Annotated Penal Code. In defending against this contention, appellee contended that the collision occurred at a time when there was sufficient light to render clearly discernable any person upon the highway from a distance of at least 200 feet and that it was less than a half hour after sunset, wherefore, it was not necessary and he was not required under the law to have his tail light displayed as provided by the third paragraph of Section 9 of the article referred to.

The case was submitted to a jury upon special issues and, under the contentions of the respective parties, the court properly submitted special issue No. 6 in which the jury were asked if they found from a preponderance of the evidence that the collision happened at a time when there was not sufficient light to render clearly discernable any person upon the highway for a distance of at least 200 feet. The jury answered this special issue in the negative and, other issues not here involved being answered in favor of appellee, the court entered judgment for him. The controlling question in this appeal is involved in the jury's answer to this special issue No. 6. Appellant presents the case here upon a single assignment of error which is substantially to the effect that the answer of the jury to special issue No. 6 is contrary to the law and the evidence and is without support in the evidence.

Article 798 of the Penal Code provides that motor vehicles, while on the public highways, during the period between a half hour after sunset and a half hour before sunrise, and at all times when fog or other atmospheric conditions render their operation unusually dangerous to traffic, shall carry at the rear a lighted lamp exhibiting one red light, plainly visible for a distance of 500 feet to the rear. The evidence shows that upon the day and at the time of the collision the sky was overcast with clouds and it was sprinkling rain. It had been raining during the day and the shoulders and ditches on either side of the highway were muddy and soft. It is shown, and is also well known, that under such atmospheric conditions, darkness approaches earlier than it does when the sky is clear, and a large portion of the evidence concerns the actual atmospheric conditions and visibility at the time of the collision. Appellant contends that the finding of the jury in answer to special issue No. 6 was wholly unsupported by the evidence or at least that it was so overwhelmingly against the great weight and preponderance of the evidence as to be clearly wrong and sufficiently so to constitute the basis of a conclusion that the jury was biased in favor of appellee. He contends further that, by answering special issue No. 6 without evidence to support it, the jury were precluded from answering the two following special issues Nos. 7 and 8. They were instructed by the court not to answer these two special issues if they had answered special issue No. 6 in the negative. The jury were asked in special issue No. 7 if they found from a preponderance of the evidence that appellee's truck, at the time of the collision, did not carry at the rear a lighted lamp exhibiting a red light plainly visible for a distance of 500 feet to the rear. In special issue No. 8 they were asked if they found from a preponderance of the evidence that the failure of appellee to carry at the rear of his truck a lighted lamp exhibiting a red light plainly visible for a distance of 500 feet to the rear was a proximate cause of the collision. Inasmuch as the jury had answered special issue No. 6 in the negative, in compliance with the instruction of the court, they did not answer these special issues Nos. 7 and 8.

■ It becomes a question, therefore, of whether or not there was sufficient evidence to support the finding of the jury in answering special issue No. 6 to the effect that the collision occurred at a time when

a person was plainly visible upon the highway for a distance of 200 feet. If such a person were plainly visible, then, under the law, appellee was not required to have such a light displayed on the rear of his truck unless it was more than thirty minutes after sundown and that element of the question does not enter into the controversy.

Appellee testified that it was approximately fifteen minutes from the time his truck stopped until the collision occurred. Fred N. Clark, the sheriff of the county, testified that he went to the scene of the accident about 8:30 o'clock, as soon as he got the call and that he understood they had been looking for him in town "a right smart little bit" before he got the call. W. O. Kirk, one of the parties who was riding in the truck with appellee, testified that it was just about sundown or a little after when the truck ran out of gasoline and stopped. He said they had been stopped there about ten or fifteen minutes when the collision occurred. Roy Owens, another witness who was riding in the truck with appellee at the time, testified that about a minute after the truck stopped he and another young man who was riding with them went to a nearby house in search of some gasoline and that they ran a considerable portion of the distance, both going and returning. He said they were gone about five minutes and that appellee turned his lights on shortly after they returned. He said they were there altogether about fifteen minutes when the accident occurred. A. J. Standifer, a witness for appellant, testified that the truck stopped 150 or 200 yards from his house. He said when it passed his house the lights on the truck were not burning and that it was not dark enough to require lights. Shirley Race, another witness for appellant, testified that the truck stopped almost a quarter of a mile from his house and that it was still daylight when he saw the boys going for the gasoline. He said before the collision he could see a grain drill that was on the truck and, when asked to describe the drill, he said it was just an ordinary color, not very bright, and was unpainted.

None of these witnesses testified as to the exact time of day by the clock. The above constitutes the essence of the testimony favorable to appellee and which goes to establish his contention that, at the time of the accident, none of the conditions prevailed under which he was required, either by the statute or as a matter of reasonable diligence, to have a red light displayed and in operation upon the rear end of his truck. The question, therefore, is whether or not, under this testimony, the jury were warranted in answering special issue No. 6 in the negative.

The witness Race testified it was about fifty minutes after the truck stopped until the collision occurred. He said, however, that when the truck stopped he could see the drill located upon it and could discern its color and whether or not it was painted. The distance at that time between him and the truck was almost a quarter of a mile. Appellee and the two witnesses who were with him in the truck when it stopped and were present when the accident occurred all testified the accident occurred within fifteen minutes after the truck stopped. The witness Kirk testified it was about sundown or a little after, when the truck stopped. One of these witnesses also testified that, when the collision occurred, he could still see the outline of houses in the neighborhood and, as far as the record shows, one of the nearest houses was 150 or 200 yards away and the other almost a quarter of a mile away.

■ Appellant and some of his witnesses testified that it was dark and cloudy but no test was made to ascertain whether or not, at the time of the collision, a person could be plainly seen at a distance of 200 feet from the truck. The jury concluded, however, that such visibility did prevail at the time and we think their conclusion was amply justified by the evidence in the case.

■ Appellant contends the case should be reversed under the doctrine announced in St. Louis, B. & M. Ry. Co. v. Little, Tex.Civ.App., 81 S.W.2d 122, and National Life & Acc. Ins. Co. v. Sanchez et al., Tex.Civ.App., 281 S.W. 891. It is held in those cases, and many others, that findings of the jury that are contrary to the overwhelming preponderance of the evidence, and are such as to warrant the conclusion that the jurors were actuated by bias or prejudice, will be set aside and that under such circumstances, the trial court should grant a new trial. We do not deem the findings of the jury in this case to be of that nature. It has many times been held by our courts that if, discarding all adverse evidence and giving credit to all the evidence which can be construed to support the jury's finding, and indulging every legitimate conclusion favorable to the win-

ning party in the trial which might have been drawn from the facts proved, a jury might have found in his favor, the evidence is sufficient to support the verdict. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S.W. 585; Pennsylvania Fire Ins. Co. v. Waggoner Estate, Tex.Civ.App., 41 S.W.2d 340; Traders & General Ins. Co. v. Durbin, Tex. Civ.App., 119 S.W.2d 595.

When we apply this test to the evidence shown in the record before us, we are forced to the conclusion that the answer of the jury to special issue No. 6 was amply supported by the evidence. In fact, we are not able to say that the evidence did not preponderate in favor of such finding. All of the witnesses who were present at the scene of the accident from the time the truck stopped until the collision occurred testified it was not more than fifteen minutes after the truck stopped until the accident occurred. Even Shirley Race, a witness for appellant, testified that when the boys returned from their search for some gasoline at a nearby house it was still daylight and he could see the drill located on the truck even to the extent that he could discern its color and whether or not it was painted. Those who were present at the truck during all of the time testified that it was not more than ten minutes after the boys returned to the truck until the collision occurred. Even though the sky was overcast with clouds and it was sprinkling rain, it does not comport with reason to say that within ten minutes after a man could see so clearly from a distance of approximately a quarter of a mile that he could discern the color of a drill located on the truck, it became so dark that a person could not be clearly discerned only 200 feet away. Obviously, some of the witnesses were mistaken as to the length of time that elapsed between the moment the truck stopped and the moment the collision occurred. The evidence was conflicting on this point. Some of them said it was forty-five or fifty minutes; others said it was ten or fifteen minutes. The jury resolved the conflict in favor of the appellee and, there being ample evidence to support the finding, we are without authority to set it aside.

As we have stated, if the conditions existed as found by the jury in answer to special issue No. 6, then the other questions concerning lights and reflectors on the truck become immaterial. We cannot agree with appellant that the jury's answer to special issue No. 6 does not have support in the testimony and, being of the opinion that no error is shown by the assignment of error presented, the judgment of the trial court is affirmed.