**BOSTON INS. CO. v. RAINWATER et al.**

**No. 5742.**

Court of Civil Appeals of Texas. Amarillo.
Oct. 7, 1946.

Rehearing Denied Nov. 9, 1946.

Morgan, Culton, Morgan & Britain, of Amarillo, for appellant.

Warlick, Bunnenberg & Douglas, of Vernon, for appellees Rainwater et al.

M. C. Culbertson, of Vernon, for appellee Davis.

PITTS, Chief Justice.

Appellees, Clarence Rainwater and Bass S. King, filed suit against Boston Insurance Company, hereafter referred to as appellant or insurer, and T. E. Davis to recover on a fire insurance policy issued by the insurer through Davis and his agency to cover a gin and machinery used in connection therewith located in Wilbarger County which gin burned about five o'clock a. m. on February 15, 1945. Continental Gin Company of Dallas, the Waggoner National Bank, and Mrs. Mary Mildred Warlick, joined pro forma by her husband, O. T. Warlick, were made party defendants because appellees were indebted to them and they each held a mortgage on the gin property. They will be hereafter referred to as mortgagees or lienholders. However, the policy did not show the Waggoner National Bank to be a mortgagee and appellees asked that the loss payable clause in the policy be reformed so as to show and include the said bank as a lienholder.

Appellant denied liability under the terms of the policy on the grounds that appellees had breached warranties inserted in the policy in their failures to keep a night watchman on duty and in permitting baled cotton to be stored on a platform attached to the gin house in violation of the provisions of the application and the terms of the policy. Davis answered and adopted appellant's answers in so far as they applied to him.

The case was tried before the court without a jury and judgment was rendered for appellees and against appellant for $12,974.73 with interest thereon at the rate of six per cent per annum from March 3, 1945, until paid. The judgment reformed the loss payable clause in the policy so as to include the Waggoner National Bank as a mortgagee and adjudged to each of the mortgagees the amounts according to their respective interest. The trial court denied any recovery against T. E. Davis. Appellant excepted to the judgment and perfected an appeal to this Court. Appellees excepted to that part of the judgment denying them any recovery against Davis and perfected an appeal to this Court on that issue alone.

The record is lengthy and appellant presents sixty-two points of error but we shall pass upon them in the order that seems most logical to us.

The record reveals that T. E. Davis had operated an insurance agency at Vernon under the name of the Davis Agency for a number of years and had been writing the insurance for appellees on their gin for a number of years; that Mrs. Melba Ruth Tabor had been working in the office of the Davis Agency for fifteen years, was then the office manager and familiar with the business generally, and that J. M. Napier was an agent for Davis and as such agent took the application of appellee, Bass S. King, on July 18, 1944, for the insurance in question; that there is nothing in the application which would disclose any limitation upon the agent's authority; that the application bears a certificate signed by T. E. Davis in which certificate he says he has known the applicant twenty years; that he personally inspected the gin plant on July 15, 1944; that the buildings were clean and the premises free from weeds or rubbish; that the doors and windows were in good condition; that the risk had never been refused for insurance within his knowledge; that there was only one other gin.

within three miles of the risk; that he had reviewed the application and believed the questions were properly answered. Among other things the application shows appellees indebted to the Continental Gin Company, Dallas, and to Mrs. Mary Mildred Warlick, Vernon, and that the policy would contain a loss payable clause in their favor; that baled cotton would be kept or stored on the yard and not in attached workhouse or on attached platform and that a night watchman would be kept during operating season or during regular season. The record further reveals that in due time appellant issued the policy and sent it to T. E. Davis who countersigned it and it was sent to the Continental Gin Company at Dallas without appellees seeing it until after the fire.

At the request of appellant the trial court made lengthy findings and conclusions and made additional findings and conclusions at the request of appellant but declined to make some as requested by appellant. These will be referred to if and when they appear to be material.

Appellant charges in effect in the first and second points of error that the trial court erred in finding, without sufficient evidence to support it, that T. E. Davis and his employees were familiar with the manner in which appellees operated their gin and with the various indebtedness against the gin secured by liens and that King told Napier when the application was written that the Waggoner National Bank of Vernon had a debt and lien against the gin property.

To test the sufficiency of the evidence to determine if it will support the trial court's findings, we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence and circumstances to the contrary. Cartwright v. Canode, 106 Tex. 502, 507, 171 S.W. 696; Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S.W. 585; Pennsylvania Fire Ins. Co. v. W. T. Waggoner Estate, Tex Civ.App., 41 S.W.2d 340; Hulsey v. Patterson, Tex.Civ.App., 121 S.W.2d 509; and Alexander Marketing Co. v. Medford, Tex.Civ.App., 170 S.W.2d 809.

It is likewise the rule that the findings of the trial judge where there is no jury will not be disturbed by an appellate court where there is some evidence of probative force to support the findings, even though the evidence is conflicting and the Court of Civil Appeals might have reached a different conclusion. It is also a well settled rule that a trial court's findings of fact will be upheld unless they are manifestly erroneous and they will be overruled only when they are without any evidence to support them or where they are so against the great weight and preponderance of the evidence as to be manifestly wrong. Leonard v. Smith, Tex. Civ.App., 186 S.W.2d 284; Custer v. McGough, Tex.Civ.App., 184 S.W.2d 668; Gossett, Banking Commissioner, v. Green, Tex.Civ.App., 153 S.W.2d 500; Belstrom v. Belstrom, Tex.Civ.App., 144 S.W.2d 614, and numerous other authorities.

King testified that Napier asked him when the application was signed about the indebtedness against the gin property and he told him the Continental Gin Company of Dallas, Mr. and Mrs. O. T. Warlick of Vernon, and the Waggoner National Bank of Vernon held liens against the property and he wanted Napier to protect them and Napier said he would. King further testified that the Davis Agency had been writing the insurance annually on the gin for thirteen or fourteen years; that Davis and Napier had stopped by the gin once or twice every season and inspected the same. T. E. Davis testified that he had been writing insurance on the gin for five or six years and probably longer and that he had visited and inspected the gin through the years. Melba Ruth Tabor, the office assistant for fifteen years, testified that she knew something about the property in question as well as the insurance on it and the liens against it during the previous years.

Although there was testimony to the contrary, applying the rules of law to the evidence here found we believe there is sufficient evidence of probative force to support the findings of the trial court about which appellant complains in points of error one and two and the said points are therefore overruled.

Appellant groups and briefs together a number of points to which we shall add others of a similar nature. Findings of the trial court are challenged in these points on the ground that the evidence is insufficient to support the said findings which are stated in effect as follows: (1) That misrepresentations were written into the application for insurance by Davis and his employees, agents of appellant, in respect to inquiries about appellees keeping a night watchman on duty and about appellees not storing baled cotton on the gin platform; (2) that neither Napier nor anyone else for appellant ever inquired of appellees if they would keep a night watchman or if cotton would be stored on the platform attached to the gin house and that appellees never told appellant or any of its agents that such would or would not be done; (3) that the said agents of appellant wrote into the application after King had signed it the said misrepresentations from their own knowledge about the business and as a result of their own negligence and errors without the authority, knowledge, or consent of appellees who would not have accepted the policy that way but would have had the same corrected showing the contrary had they known such misrepresentations were there.

Appellant further charges that the trial court erred in making the following conclusions of law: That because of the misrepresentations of appellant's agents so made in filling in the application the warranties in question found in the policy were not those of appellees and appellant had waived its claims of breach of warranty by appellees and that appellant is estopped from claiming a breach of such warranties shown in the policy as a result of the negligence and carelessness of its agents and that the policy was in full force and effect on February 15, 1945.

All the negotiations in taking the application for insurance leading up to the issuance of the policy were between appellee, Bass King, and the employees of Davis, J. M. Napier and Mrs. Melba Ruth Tabor. Bass King testified in effect that Napier visited him in the gin office on July 18, 1944, for only fifteen or twenty minutes and presented an application for renewal of insurance and said "sign it" and he did sign it without knowing whether or not it was then partially filled out; that Napier did not ask him any questions about anything except about the water barrels and about the debts against the property and lien holders, the testimony about which has been hereinabove stated; that Napier did not go down the list asking the questions therein contained; that he was well acquainted with Napier; that Napier assured him everything was all right and he relied on him and they talked about other things during the rest of the time he was there. Napier controverted some of these statements.

Mrs. Tabor testified in effect that she wrote in the answer on the application to the effect that appellees would keep a night watchman "during regular season" and that she wrote in answers to other questions in the application all after King had already signed it, but after she had called King by telephone and gotten the necessary information from him to fill in the answers to such questions. King testified that he did not have any such conversation with Mrs. Tabor and never did tell her or anybody else that they would keep a night watchman and he would have replied in the negative if anybody had asked him such a question. He also testified that he would not have accepted the policy had he known Davis or his employees had filled in answers on the applications to the effect that cotton would not be stored on the platform, that in fact they never stored cotton on the platform anyway; that the platform was attached to the gin house opposite the cotton press in order that they may turn out baled cotton on it as the same was ginned and baled and that the cotton was moved from the platform immediately; that some bales may stay there over night some times but it was all moved soon and stored from one hundred twenty to three hundred or four hundred feet from the gin.

The record reveals too that the Davis Agency kept copies of insurance applications of former years and that a part of the 1941 application of appellees covering

the gin was admitted in evidence showing similarities in some controverted answers and it was urged by appellees that some of the answers in the 1944 application may have been taken from the 1941 application or other previous applications by the employees of Davis for the sake of convenience after the application had been signed by King. The record further reveals that after King signed the application neither of the appellees saw it again before the fire and that neither of them saw the policy until after the fire; that on receipt of the policy the Davis Agency sent it to the Continental Gin Company at Dallas without the knowledge or consent of appellees. The record further shows that a charge was originally made against appellees for storing cotton on the platform and included in the total premium bill presented to appellees but some two months later a new rate sheet was made which deleted the charge for storing cotton on the platform and the amended rate sheet was sent by the Davis Agency to the Continental Gin Company at Dallas and was attached to the policy as a rider. The record reveals that appellees knew nothing about such charge being made or being deleted or about the rider being attached to the policy until after the fire, although a rebate or statement for a rebate of $17.96 was sent to appellees without any notice of what it was for and King testified they had no idea what it was for but supposed it was for an error the agents had made in calculating the premium. He further testified that the charge was made without their knowledge but that they would not have permitted the rider to be attached to the policy if they had known about it.

■ Appellant presents apparent discrepancies in the testimony of appellee, King, and contends that such should discredit his testimony. When discrepancies exist, such may or may not have some bearing on a preponderance of the evidence as it is passed on by the trial court, but in a trial without a jury the trial judge passes on the facts and he is the sole judge of the credibility of the witnesses and the weight to be given to their testi-

mony. Glenn v. Glenn, Tex.Civ.App., 183 S.W.2d 231. According to his findings here the trial judge gave credence to King's testimony even though it is controverted in some instances. King's testimony concerning the controlling issues was very positive and it seems the trial court believed him and so· found. Under the rules of law hereinabove cited we are bound by such findings since it appears there is sufficient evidence of probative force to support the findings of the trial court hereinabove stated. We further believe that in view of the findings of the trial court in effect that the agents of appellant were responsible for the misstatements made in the application and that appellees were in no way responsible for such misstatements but that they relied upon appellant's agents to prepare the application and policy since such agents were acquainted with the business and knew the facts about which the misstatements were made, the trial court was justified in reaching the conclusions of law hereinabove stated.

■ The rule is well stated in the case of Texas Banking & Insurance Co. v. Stone, 49 Tex. 4, in which the court held that the rule is well settled that the insurer is estopped from claiming a breach of warranty to defeat an action on its policy when the insurer's agents are responsible for omissions or improper statements made in the application upon which the warranties relied on to defeat the policy are based and when the insured is in no way responsible for the improper statements or mistakes and has not contributed in any way to such mistakes but have relied upon the insurer or its agents who are acquainted with the existing facts to prepare the application and policy and did not know of the misstatements or mistake until after the hazard. Numerous authorities are cited by the court in support of the rule and the court gives at length the reason for such a rule.

The case of Equity Mut. Fire Ins. Co. v. Harrell, Tex.Civ.App., 247 S.W. 678, holds that the insurer is estopped from claiming a breach of warranties in a policy when the

warranties were inserted in the policy by reason of the erroneous information contained in the application due to the insertion of such erroneous information therein by the insurer's agent without the authority of the insured.

This Court held in the case of Southern Travelers' Ass'n v. Boyd, Tex.Civ.App., 1 S.W.2d 446, 449, that the contractual provisions of an insurance policy are not void because erroneous answers were written into the application by the insurer's agent without any suggestion from the insured and that such is true even if it is stated in the policy "that the agent shall be considered as the agent of the insured." The Commission of Appeals approved such holding of this court in the said case as reported in 12 S.W.2d 183.

It was held in the case of American Surety Co. of New York v. Blaine, Tex. Civ.App., 9 S.W.2d 765, that an insurer cannot "void" its policy on the grounds of misrepresentations about material matters affecting the policy when in fact the insurer's agent was responsible for the misrepresentations without the authority or knowledge of the insured and that the insurer is estopped from claiming the misrepresentations as a defense.

The above rules of law have been consistently followed and many other authorities can be easily found supporting such rules.

We therefore overrule the point of error hereinabove grouped together and sustain the trial court's findings and conclusions.

■ Appellant charges that the trial court erred in finding as a matter of fact and construing as a matter of law that T. E. Davis was a general agent of appellant. In fact, the trial court found that Davis was at least a local agent of appellant and was its general agent to the extent that appellant required him to countersign its policies. Mrs. Tabor testified that T. E. Davis, doing business as the Davis Agency, wrote insurance for appellant anywhere in Texas; that Davis countersigns the policies of appellant; that the Davis Agency had application blanks and blank rate sheets of appellant and had

a "General Basis" for rating property. The record reveals that the policy in question was countersigned by Davis and it provided that the said policy would not be valid until it was so countersigned; that Davis signed the rider in question attached to the policy; that in the instant case, Davis and his employees inspected the property, wrote the application, delivered the policy to the Continental Gin Company, sent statements to appellees for premiums and collected the premium. The court held in the case of Mecca Fire Ins. Co. v. Smith, Tex.Civ.App., 135 S.W. 688, 689, under such a statement of facts that the agent "was, in effect, the company itself in the conduct of its business by him. He was such an agent as that notice to him of an incumbrance upon property insured acquired in the transaction of the business of the company was notice to the company" and the court cites numerous authorities in support of the rule. We likewise cite the case of Camden Fire Ins. Ass'n v. Sutherland, Tex.Civ.App., 278 S.W. 907, reformed and affirmed by the Commission of Appeals, 284 S.W. 927, and United States Fidelity & Guaranty Co. v. Taylor, Tex.Civ.App., 11 S.W.2d 340, in support of the trial court's conclusions. In view of the facts and all the authorities heretofore cited we sustain the trial court's findings and its holding about which appellant here complains.

■ Appellant complains because the trial court found that liability was denied by appellant on March 3, 1945, and because it concluded that interest on the damages sustained by reason of the loss began to run on the said date even though the policy provides that the loss shall not be payable until sixty days after proof of loss has been furnished. The record shows that on a refusal of appellees to sign a nonwaiver on March 3, 1945, appellant's agent said "under these circumstances, we have no recourse but to deny liability" and such position was consistently reiterated by appellant thereafter. The Commission of Appeals held in the case of Central Federal Fire Ins. Co. v. Lewis, Tex.Com.App., 44 S.W.2d 936, that in such cases interest will begin to run from the date liability is

denied regardless of whether or not sixty days has expired after proofs of loss had been furnished the insurer or whether or not proofs of loss have been waived. We therefore sustain the trial court's findings and conclusions.

■ Appellant contends that the trial court erred in concluding as a matter of law that the mortgagees or lien holders hereinabove named were entitled to judgment against appellant. Under the facts found by the trial court and the provisions of Article 4931, Revised Civil Statutes, as construed by the Commission of Appeals in the case of Georgia Home Ins. Co. v. Golden, 127 Tex. 93, 91 S.W.2d 695, we overrule appellant's contentions and sustain the trial court.

■ Appellant likewise contends that the trial court erred in concluding that the policy should be reformed so as to contain a loss payable clause in favor of the Waggoner National Bank of Vernon, claiming that the said bank was omitted as a mortgagee only because of a unilateral mistake. The record reflects that the trial court did not find such omission due to a unilateral mistake but found that King told Napier when the application was signed that the bank was a lien holder and he wanted it protected and the trial court further found the said bank was omitted and not named in the application as a result of the negligence and careless mistakes of appellant's agents. The record supports such findings and we therefore overrule the contention of appellant.

■ Appellant complains at the refusal of the trial court to find at its request that the application and policy used were regular Texas standard forms and that appellees are charged with notice of their contents and bound by their provisions. The trial court found that the evidence did not reveal whether or not they were Texas forms and that appellees did not see the policy until after the fire and, according to the record, the trial court is justified in so stating. It has been held that even though a policy may purport to be a "Texas standard form" and may have such written across its face, yet it is not necessarily a statutory policy that would bind the insured regardless of how little he may know about the form. Regardless of the law and the trial court's findings, we think the question presented is not material here. The controlling issues here grew out of the answers appellant's agents wrote into the forms used and there is no contention that the answers were standardized. Certainly they could not have been since the answers would vary in each application and the terms in each policy. The trial court has found the answers in question to have been erroneous and that appellant is estopped from denying liability. We therefore overrule appellant's complaint and sustain the trial court in these matters.

■ Appellant complains because the trial court found the value of the south cotton house was $3000 immediately before the fire and $2000 immediately after the fire and about its conclusions as a matter of law that the said loss was twenty-five per cent greater than the amount of insurance carried on this item. Appellant contends that the policy fixed the measure of damages in case of fire and that it said such sum for damages "shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and like quality." Appellees resist appellant's contentions and present the rule which provides that the measure of damages for a building not completely destroyed by fire is the difference between its value immediately before the fire and immediately after the fire, but appellees say that the judgment of the trial court complies with appellant's contention in the matter. We find that the controverted evidence supports the findings of the court as to values. The record reveals that the south cotton house, which was separate from the main gin plant, was insured for $1250, that the damage done to it by the fire was no less than $1000, but that appellees sought to recover and did recover only $549.73 for damages done to the south cotton house, which sum is less than the $560 as shown by the proof to have been spent already for repairs of the said building with the said repairs still

incomplete. If there were any errors in the trial court's findings and conclusions in these matters such were harmless and appellant's contentions are therefore overruled.

■ Appellant contends that the trial court erred in refusing to find the amount of additional premiums due to insurer for appellees' failure to keep a night watchman and for keeping cotton stored on the gin platform' but instead the trial court found that appellees were not liable to appellant for the usual rate of additional premium so charged since such had been waived. We think the trial court properly held that such additional premiums were waived by appellant. However the record reveals that an extra charge was originally made by appellant's agents for keeping baled cotton on the gin platform but later voluntarily deleted and refunded by appellant's agents who had attached to the policy a rider as evidence of such. Then we have failed to find in the record where appellant sought during the trial to recover any such additional premiums from appellees.

■ Appellant complains that the trial court erred in concluding as a matter of law that all of the items insured shown in the policy were totally and completely destroyed by fire except the south cotton house. The record reveals a stipulation made by the parties which stipulation reads as follows: "It is agreed that the plaintiffs suffered the amount of loss, plead in their petition, to all items alleged in their petition, save and except the damage to the cotton house." Harleston, the adjuster, testified that all except the south cotton house was down on the ground and in his judgment so badly damaged that it was not worth any salvage value. In view of the stipulation and the testimony of Harleston we overrule appellant's com-

plaint and sustain the trial court in the matter.

Appellant further complains because the trial court found that February 15, 1945, the date of the fire, was not a part of the "regular" or "operating" season and discusses again at some length the conflicting testimony concerning the warranties heretofore disposed of by us. A careful examination of the evidence reveals that there was ample evidence from disinterested witnesses to support the findings of the trial court, but such findings are not material in view of our disposition of other issues and if such findings were erroneous they are harmless and the complaints are overruled.

■ Appellant complains further about the failure of the trial court to make findings upon their request about matters that seem to us to be inconsequential matters and it further complains about other findings the trial court made concerning matters that appear to us to be only evidentiary and not ultimate issues of fact. We believe we have already passed on all the ultimate issues of fact raised by appellant in the case and the controlling questions of law. Other points of error have been carefully examined by us and are overruled.

■ The record reveals that plaintiffs, Clarence Rainwater and Bass S. King, perfected an appeal to this Court from that part of the trial court's judgment denying them any recovery against T. E. Davis and they present one point of error to that effect. Plaintiffs have shown no damage as a result of the agent's wrongful acts and the point of error is therefore overruled.

We have carefully examined the record and all assignments of error but we have failed to find any reversible errors. We therefore affirm the judgment of the trial court.